**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LANCE LEDET, Individually and for Others Similarly Situated, | ) ) ) | CIVIL DIVISION |
| Plaintiff, | ) ) | Case No. 2:22-cv-01324 |
| v. | ) ) | FLSA Collective Action |
| H&K ENGINEERING, LLC and ORBITAL ENGINEERING, INC. | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | ELECTRONIC FILING |

**LEDET'S MEMORANDUM OF LAW IN SUPPORT OF
AMENDED MOTION FOR CONDITIONAL CERTIFICATION
AND COURT-AUTHORIZED NOTICE**

**Michael A. Josephson**
PA ID: 308410
**Andrew W. Dunlap**
TX Bar No. 24078444
**Alyssa J. White**
TX Bar No. 24073014
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Joshua P. Geist**
PA ID: 85745
**GOODRICH & GEIST PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE CLASS MEMBERS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................II

TABLE OF EXHIBITS...........................................................................................III

I.   INTRODUCTION. ........................................................................................1

II.  RELEVANT FACTS. .....................................................................................1

     A.   Orbital and H&K utilized the same pay practices before and after Orbital acquired
     H&K. ……………………………………………………………………...........1

     B.   Defendants' Straight Time for Overtime Pay Practice is Widespread and
     Systematically Applied to All Straight Time Workers. ...................................................... 8

III. ARGUMENT & AUTHORITIES. .........................................................................9

     A.   The Third Circuit Uses a Two-Step Approach with a Lenient Standard Typically
     Resulting in Conditional Certification. .................................................................. 9

     B.   Conditional Certification Does Not Result in a Decision on the Merits............... 11

     1.   Arguments Related to Whether Orbital "Employed" or "Jointly Employed" Ledet and
     the Straight Time Workers Go to the Merits. ...................................................... 12

     2.   Arguments Related to Defendants' Exemption Defense Go to the Merits................. 17

     C.   Courts Routinely Conditionally Certify FLSA Collective Actions Based on
     Uniform Straight Time for Overtime Pay Practices. .......................................... 17

IV.  LEDET'S NOTICE DOCUMENTS AND NOTICE METHODS ARE APPROPRIATE................ 18

     A.   Courts Routinely Require the Production of Names, Addresses, E-mail Addresses,
     and Phone Numbers for the Notice Process......................................................... 19

     B.   Email Notice is the Rule Not the Exception. ......................................................... 19

     C.   Notice Via Text Message Is a Reliable Method for Delivering Information About
     This Lawsuit.......................................................................................................... 20

     D.   Reminder Notice is Appropriate. ......................................................................... 21

     E.   Ledet Requests the Court Authorize Him to Call Certain Potential Plaintiffs
     Whose Notice Is Returned Undeliverable............................................................ 21

V.   CONCLUSION ...........................................................................................22

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | January 2020 H&K Goutreaux Offer Letter |
| 2 | 2018 Sample Orbital Offer Letter |
| 3 | February 2023 H&K Supplemental Responses to Ledet's First Discovery Requests |
| 4 | Excerpts from H&K Corporate Representative Deposition Testimony |
| 5 | January 2023 Orbital Responses to Ledet's First Discovery Requests |
| 6 | Ledet's May 2020 H&K Offer Letter |
| 7 | October 2021 Joint Offer Letter – H&K/Orbital (Drake) |
| 8 | November 2021 Joint Offer Letter – H&K/Orbital (Stewart) |
| 9 | Orbital/H&K Joint Employment Contract Agreement |
| 10 | Exemplar H&K Offer Letters |
| 11 | 2022 Orbital Correspondence – Assignment of Services |
| 12 | Declaration of Lance Ledet |
| 13 | Deposition Testimony of Lance Ledet (Excerpts) |
| 14 | Declaration of Tommy Strawn |
| 15 | Excerpts from Orbital Corporate Representative Deposition Testimony |
| 16 | Deposition Testimony of Dylan Lewis (Excerpts) |
| 17 | Ledet's Proposed Notice & Consent Forms |
| 18 | Exemplar H&K Pay Records for Numerous H&K Employees Reflecting H&K Paying Straight Time for Overtime (October 2020-November 2021) |
| 19 | Exemplar Orbital Pay Records for Numerous Orbital Employees Reflecting Orbital Paying Straight Time for Overtime (September 2021-May 2022) |
| 20 | 100% Membership Purchase Agreement |

## I.    INTRODUCTION.

Ledet requests the Court grant conditional certification and authorize notice be sent to the following putative class:

> **All current or former employees of H&K and/or Orbital who were paid straight time for overtime in the past three years (the Putative Class Members or Straight Time Workers).**

H&K Engineering, LLC (H&K) consents to conditional certification and notice. Dkt. 50, *3 ("H&K has already agreed not to contest Plaintiff's certification motion as to H&K."). However, Orbital Engineering, Inc. (Orbital) opposes conditional certification and notice, despite utilizing the same pay practices and asserting the same defenses. Therefore, the question presented is whether Orbital employees were subject to a pay policy sufficiently similar to that of the H&K employees and thus should also receive notice of their rights under the FLSA.

Because employees of both companies were subject to the same or similar policies, utilized the same straight time for overtime pay structure, assert the same defenses, and now the companies have been consolidated pursuant to the 100% Membership Purchase Agreement where Orbital wholly purchased H&K, its assets and liabilities, conditional certification and notice are appropriate.

## II.    RELEVANT FACTS.

### A.    Orbital and H&K utilized the same pay practices before and after Orbital acquired H&K.

According to Defendants, Ledet is an exempt employee of H&K. Dkt. 22, *9, Aff. Def. 8. Together, both Defendants deny the use of the "straight time for overtime scheme." Id., *5, ¶ 44. Nonetheless, upon review of the offer letters, pay records, and depositions of corporate representatives, it is clear Defendants share common pay practices and assert uniform defenses to defend against the alleged FLSA violations.

The existence of common pay practices are evidenced by Defendants' offer letters which both describe the positions of the Putative Class Members as exempt and eligible to receive straight time for overtime. For example, the following offer letters are nearly identical in describing the pay:



January 2, 2020

Mr. Brandin Goutreaux

| Redacted |
| --- |

Dear Mr. Goutreaux:

I am pleased to confirm our offer of employment with H&K Staffing Services, LLC. You will be working at our client's location at Methanex in Houston, TX, initially, then at their location in Geismar, LA, as a Senior Planner/Scheduler. You will report to Brian Hunt.

Your bi-weekly pay will be $7,200.00. You will be exempt in status and will receive straight time pay for any overtime worked at a rate pay of $90.00 per hour. You will receive per diem in the amount of $83/day (5 days a week). In addition, you will be reimbursed for mileage to and from the Houston site bi-weekly, including the initial trip and return trip at the end of the Houston assignment, at the IRS approved rate (currently $0.58/mile). Lodging will be provided by H&K.

*See* Exhibit 1, H&K January 2020 Goutreaux Offer Letter.



1344 Fifth Avenue
Pittsburgh, PA 15219

P: 412.261.9100
F: 412.261.2300

ORBITALENGR.COM

October 11, 2018



Orbital Engineering, Inc. is pleased to offer you the position of *Senior Structural Engineer* located in our Hammond, IN Office. This is a full-time, exempt position and you will be compensated an annual salary of $83,200 ($3200.00 biweekly). Also, you will be eligible for bonus time basis or $40.00/hour for billable time worked over 40 billable hours per week. Orbital Engineering, Inc. pays its employees on a bi-weekly basis. You will report to ▮▮▮▮▮ Civil/Structural Dept. Manager. Your anticipated start date is Monday October 22, 2018.

*See* Exhibit 2, Orbital October 2018 Offer Letter. The H&K Corporate Representative confirmed that, all the H&K employees, regardless of offer letter, were paid under the structure described in Exhibit 1. *See* Exhibit 4, H&K Corporate Representative Testimony at 42:4-44:12. The

2

H&K Corporate Representative confirmed that the offer letters provided to H&K employees and Orbital employees similarly described the pay policies. *Id.*, at 44:14-49:19.[1]

To further the similarities, Defendants provide nearly identical answers to questions regarding the contentions in the case:

| | |
|---|---|
| 6. Admit that H&K contends it complied with the FLSA in good faith.<br><br>RESPONSE: H&K **ADMITS** the allegations contained in Request No. 6 with respect to certain employees. | 6. Admit that ORBITAL contends it complied with the FLSA in good faith.<br><br>RESPONSE: Without waiving any attorney-client or work product doctrine privileges, Orbital **ADMITS** the allegations contained in Request No. 6. |
| 7. Admit that H&K contends it satisfied the salary basis test as to its employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: H&K **ADMITS** the allegations contained in Request No. 7 with respect to certain employees. | 7. Admit that ORBITAL contends it satisfied the salary basis test as to its employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: Orbital **ADMITS** that it contends it satisfied the salary basis test as to its employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 7. |
| 8. Admit that H&K contends it satisfied the FLSA's administrative exemption duties test as to certain employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: H&K **ADMITS** the allegations contained in Request No. 8. | 8. Admit that ORBITAL contends it satisfied the FLSA's administrative exemption duties test as to certain employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: Orbital **ADMITS** that it contends it satisfied the FLSA's administrative exemption duties test as to certain employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR |

---

[1] Orbital claims its pay policy is somehow different because it paid a "base salary" plus additional straight time hourly compensation for all hours worked over 40 in a week, as H&K also made this claim. Ex. 4 at 31:7-31:10 (claiming H&K paid both hourly workers and allegedly salaried workers straight time for overtime); 35:23-38:14, 41:2-42:3, 48:19-50:7 (noting H&K, like Orbital, also claimed to have paid workers receiving straight time for overtime a salary plus additional hourly pay at a straight time rate in its offer letters to Putative Class Members, despite the fact they were not paid a salary).

| | OVERTIME. Orbital DENIES any other allegations contained in Request No. 8. |
|---|---|
| 9. Admit that H&K contends it satisfied the FLSA's executive exemption duties test as to certain employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: H&K **ADMITS** the allegations contained in Request No. 9. | 9. Admit that ORBITAL contends it satisfied the FLSA's executive exemption duties test as to certain employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: Orbital **ADMITS** that it contends it satisfied the FLSA's executive exemption duties test as to certain employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 9. |
| 10. Admit that H&K contends it satisfied the FLSA's professional exemption duties test as to certain employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: H&K **ADMITS** the allegations contained in Request No. 10. | 10. Admit that ORBITAL contends it satisfied the FLSA's professional exemption duties test as to certain employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: Orbital **ADMITS** that it contends it satisfied the FLSA's professional exemption duties test as to certain employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 10. |
| 11. Admit that H&K contends it meets the FLSA's highly compensated employee test for certain employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: H&K **ADMITS** the allegations contained in Request No. 11. | 11. Admit that ORBITAL contends it meets the FLSA's highly compensated employee test for certain employees paid STRAIGHT TIME FOR OVERTIME.<br><br>RESPONSE: Orbital **ADMITS** that it contends it satisfied the FLSA's highly compensated employee test for certain employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 11. |
| 12. Admit that H&K tracked the hours worked by its employees paid STRAIGHT TIME FOR OVERTIME. | 12. Admit that ORBITAL tracked the hours worked by its employees paid STRAIGHT TIME FOR OVERTIME. |

| | |
|---|---|
| RESPONSE: H&K **ADMITS** the allegations contained in Request No. 12 with respect to certain employees. | RESPONSE: Orbital **ADMITS** that it tracked the hours worked by certain of its employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 12. |
| 13. Admit that H&K recorded the pay received by its employees paid STRAIGHT TIME FOR OVERTIME. | 13. Admit that ORBITAL recorded the pay received by its employees paid STRAIGHT TIME FOR OVERTIME. |
| RESPONSE: H&K **ADMITS** the allegations contained in Request No. 13 with respect to certain employees. | RESPONSE: Orbital **ADMITS** that it recorded the pay received by its employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 13. |
| 15. Admit that H&K staffed its employees paid STRAIGHT TIME FOR OVERTIME to clients of H&K. | 15. Admit that ORBITAL staffed its employees paid STRAIGHT TIME FOR OVERTIME to clients of ORBITAL. |
| RESPONSE: H&K **ADMITS** the allegations contained in Request No. 15 as to certain employees. | RESPONSE: Orbital **ADMITS** that it staffed its employees to clients of Orbital. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 15. |
| 16. Admit that H&K invoices its clients on an hourly basis for the work performed by certain employees paid STRAIGHT TIME FOR OVERTIME for those clients of H&K. | 16. Admit that ORBITAL invoices its clients on an hourly basis for the work performed by certain employees paid STRAIGHT TIME FOR OVERTIME for those clients of ORBITAL. |
| RESPONSE: H&K **ADMITS** the allegations contained in Request No. 16 as to certain employees. | RESPONSE: Orbital **ADMITS** that it invoices its clients on an hourly basis for the work performed by certain employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 16. |

| | |
|---|---|
| 17. Admit that H&K does not invoice its clients on a salary basis for the work performed by its employees paid STRAIGHT TIME FOR OVERTIME for those clients of H&K.<br><br>RESPONSE: H&K **ADMITS** the allegations contained in Request No. 17. | 17. Admit that ORBITAL does not invoice its clients on a salary basis for the work performed by its employees paid STRAIGHT TIME FOR OVERTIME for those clients of ORBITAL.<br><br>RESPONSE: Orbital **ADMITS** that it does not invoice its clients on a salary basis for the work performed by certain employees. Orbital DENIES that it paid employees STRAIGHT TIME FOR OVERTIME. Orbital DENIES any other allegations contained in Request No. 17. |

*See* Exhibit 3, H&K's 2/10/2023 Discovery Responses; Exhibit 5, Orbital's 1/3/23 Discovery Responses.

Because H&K and Orbital utilized the same pay policies and the same exemptions, they were able to issue joint offer letters using the same terms at issue in this litigation, to jointly employ individuals. *See, e.g.,* Exhibit 7, Defendants' Joint Offer Letter to Richard Drake; Exhibit 8, Defendants' Offer Letters to Reggie Stewart; Exhibit 9, Defendants' Joint Employment Contract *compare with* Exhibit 10, H&K's Offer Letters Prior to Orbital Acquisition.



The H&K/Orbital offer letter (Ex. 7) is almost identical to that offer letter provided to Ledet (Exhibit 6, H&K May 2020 Ledet Offer Letter), before Orbital completed the 100% Membership

Purchase of H&K, effective January 2021.



May 13, 2020

Lance Ledet
Redacted

Re: Offer Letter

Dear Mr. Ledet:

I am pleased to confirm our offer of employment with H&K Staffing Services, LLC. You will be working at our client's location, YCI Methanol One, LLC, in St. James, Louisiana as a Mechanical/Welding Inspector. You will report to Lisa Howerton-Stevens, Quality Lead, for your project assignments and administrative activities.

Your pay rate will be $60/hr., and you will be paid bi-weekly. You will be exempt in status and will receive straight time pay for any overtime worked. You will be eligible to participate in our Employee Benefits Program.

The similarities between Defendants' policies and defenses are abundant. Yet, H&K admits its straight time for overtime policy violates the FLSA, Ex. 4 at 27:8-28:3, 101:8-14, while Orbital contends it is completely compliant with the FLSA. *See, e.g.* Ex. 5. This remains true despite the fact that Orbital acquired H&K and "accepted all of H&K's contracts and business" and began to "operate as a single company." Ex. 4 at 27:8-28:3, 101:8-14; 106:2-20; Exhibit 11, Correspondence Concerning Sale of H&K to Orbital and Assignment of Professional Services Agreement.

After the acquisition, the H&K employees paid straight time for overtime continued to work in the same capacity for Orbital. *See* Exhibit 12, Declaration of Lance Ledet, at ¶¶ 5-7; Doc. 17 at ¶¶ 9-10, 33 ("Plaintiff was employed by Defendant H & K as a Quality Assurance Manager from May 18, 2020 through February 5 of 2021 and for Defendant Orbital from February 5, 2021 to April 1, 2021."); Exhibit 13, Excerpts from the Deposition of Lance Ledet at 15:24-16:12, 29:10-17, 30:7-31:10, 49:22-50:5, 51:24-52:13, 71:22-72:8, 121:1-122:6. Following the transition, Orbital did not change the classification or pay policies implemented by H&K which were applicable to Ledet and the Straight Time Workers. *Id.*; Doc. 17 at ¶ 35 (admitting Defendants paid Ledet "the same hourly rate for all hours worked each week, including those in excess of 40 hours."); *see also* Ex. 4 at 77:11-78:23

(H&K admits the acquisition "did not change anything"); Ex. 13 at 81:16-24, 98:15-99:15.

Clearly, H&K and Orbital utilized the same pay practices and applied the same defenses. Therefore, the Straight Time Workers are similarly situated.

**B.      Defendants' Straight Time for Overtime Pay Practice is Widespread and Systematically Applied to All Straight Time Workers.**

When Ledet and the Straight Time Workers worked over 40 hours in a week, as they often did, Defendants systematically paid them at the same hourly rate they paid for the hours they worked under 40 in that same week. *See* Ex. 12 at ¶¶ 4, 14-23; Exhibit 14, Declaration of Tommy Strawn, at ¶¶ 12-18; *see also* Doc. 1, at ¶ 40; Doc. 17 at ¶ 40 (Defendants admit that "For weeks Plaintiff worked over 40 hours each week, he was paid his straight time rate for all hours worked over 40"); Ex. 13 at 31:23-32:6, 36:16-20, 53:17-54:4, 81:16-24, 83:23-85:2.

This is true for *both* Defendants: Exemplar pay records from each Defendant reflect that both Defendants' regular pay practice was to pay employees on an hourly basis, and further, that both Defendants paid their workers the same hourly rate for all hours worked in a single workweek, including those over 40. *See* Exhibit 18, H&K Pay Records Reflecting Straight Time For Overtime Pay October 2020 – November 2021; Exhibit 19, Orbital Pay Records Reflecting Straight Time for Overtime Pay September 2021 – May 2022.

Defendants' own pay records confirm the Straight Time Workers regularly worked more than 40 hours a week, but Defendants did not pay them overtime for the hours they worked over 40 each week in violation of the FLSA. *Id.* The evidence shows both Defendants uniformly applied the illegal straight time for overtime pay practice to the Straight Time Workers. *Id.* As such, these workers share a common employment experience, regardless of job title, supervisor, location, or project; and, therefore, are "similarly situated" under the lenient standard for conditional certification. *Id.*

8

III.    **ARGUMENT & AUTHORITIES.**

   A.    **The Third Circuit Uses a Two-Step Approach with a Lenient Standard Typically Resulting in Conditional Certification.**

"Collective actions brought under the FLSA, unlike class actions under Federal Rule of Civil Procedure 23, may be conditionally certified by the court to jumpstart and facilitate the notice process to potential collective action members." *Fitch v. Giant Eagle, Inc.*, 2:18-CV-01534-RJC, 2020 WL 8620076 (W.D. Pa. Oct. 28, 2020) (Eddy, M.J.) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013)). Courts in the Third Circuit use a two-step approach to determine whether to certify an FLSA collective action. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *Jones v. Alliance Inspection Management, LLC*, Civ. A. No. 13-1662, 2014 WL 1653112, at *1 (W.D. Pa. Apr. 24, 2014) (Eddy, M.J.). First, the plaintiff must show that proposed class members are similarly situated. *Jones*, 2014 WL 1653112, at *1. If the plaintiff satisfies this burden, the court will conditionally certify the class, which allows for notice to proposed class members and discovery. *Id.*

To satisfy his lenient burden for conditional certification, a plaintiff must make a "modest factual showing" the employees in the proposed class are similarly situated. *Id.* This is a lenient standard, requiring the plaintiff to produce "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.*; *see also Symczyk*, 656 F.3d at 192-93.

Conditional certification is warranted where "the class members share common terms and conditions of employment, which may be shown through the existence of a common policy, plan, or practice." *Diabate v. MV Transp., Inc.*, No. 14-857, 2015 WL 4496616, at *5 (E.D. Pa. July 20, 2015); *Rood*, 2019 WL 5422945, at *2 ; *Kolasa v. BOS Sols., Inc.*, No. 17-1087, 2018 WL 3370675, at *3 (W.D. Pa. May 10, 2018). In deciding whether employees in a putative collective are similarly situated for conditional certification, "[r]elevant factors include (but are not limited to): whether the plaintiffs are

employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Zavala*, 691 F.3d at 536-37.

When deciding conditional certification courts are "careful not to delve into the merits of the case or determine issues of credibility." *Outlaw v. Secure Health, L.P.*, No. 11-602, 2012 WL 3150582, at *3 (M.D. Pa. Aug. 2, 2012); *see also Rood*, 2019 WL 5422945, at *3-4 (refusing to "prematurely 'engage in a merits-based analysis'" at the notice stage (quoting *Waltz v. Avenda Transp. & Energy Servs., Inc.*, No. 16-469, 2016 WL 7440267, at *3 (M.D. Pa. Dec. 27, 2016)); *Thompson v. Peak Energy Servs USA, Inc.*, No. 13-266, 2013 WL 5511319, at *2 (W.D. Pa. Oct. 4, 2013) (Eddy, M.J.) (emphasizing merits-based arguments are "irrelevant to the conditional certification issue[,]" and that "it is premature to address the merits now").

"Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete." *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352 (W.D. Pa. 2018). Similarly, "[t]hat potential plaintiffs held different jobs, in different departments, in different locations does not preclude conditional certification because all were subjected to the same allegedly unlawful policy." *Id.* at 352-53 (collecting cases). Simply, "[a]t this point, the Court cannot 'reach the merits of [Plaintiffs'] FLSA claims or make conclusive findings." *Hively v. Allis-Chalmers Energy, Inc.*, No. 13-106, 2013 WL 5936418, at *6 (W.D. Pa. Nov. 5, 2013). Only at stage two – after the parties have completed discovery and the class has been identified – should "the District Court determine 'whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs.'" *Zavala*, 691 F.3d at 536 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)); *Jones*, 2014 WL 165112, at *2.

Ultimately, allowing early notice and full participation by the opt-ins "assures that the full

'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. Jan. 5, 1988). Once the notice and opt-in period are complete, the court will have the benefit of knowing the actual makeup of the class. Thus, early notice helps courts to manage the case because it can "ascertain the contours of the action at the outset." *Hoffmann-La Roche*, 493 U.S. at 172.

### B.    Conditional Certification Does Not Result in a Decision on the Merits.

At the first stage of certification, Ledet must only present "some evidence, beyond mere speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected the other employees." *Hively*, 2013 WL 5936418, at *3 (internal quotation omitted); *see also Kolasa*, 2018 WL 3370675, at *3 (citing *Meals v. Keane Frac GP LLC, et al.*, No. 16-1674, 2017 WL 2445199, at *2-3 (W.D. Pa. June 6, 2017)); *Jones*, 2014 WL 1653112, at *1. "Generally, plaintiffs meet the [lenient] standard by producing some evidence indicating common facts among the parties' claims, and/or a common policy affecting all the collective members." *Id.*

Importantly, the "merits of Plaintiff's claims do not need to be evaluated at this stage in order for notice to be approved and sent out to proposed conditional collective action members; this Court evaluates only whether the Plaintiffs are similarly situated." *Talarico v. Public P'ships, LLC,* No. 17-2165, 2018 WL 3972332, at *6 (E.D. Pa. Aug. 20, 2018) (quoting *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 63-64 (E.D. Pa. 2009)); *see also Rood*, 2019 WL 5422945, at *4 (collecting cases); *In re Enterprise Rent-A-Car Employment Pracs. Litig.*, No. 2056, 2010 WL 3447783, at *21 (W.D. Pa. Aug. 13, 2010) ("the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations"). "Although Defendant [may] argue that dissimilarities between potential opt-in plaintiffs are relevant to the issue of whether they are similarly situated, at this preliminary stage of the case, these differences among proposed class members … do not undermine Plaintiff's modest

11

factual showing." *Vargas v. Gen. Nutrition Ctr., Inc.*, No. 10-867, 2012 WL 3544733, at *8 (W.D. Pa. Aug. 16, 2012).

### 1. Arguments Related to Whether Orbital "Employed" or "Jointly Employed" Ledet and the Straight Time Workers Go to the Merits.

Defendants claim Orbital did not employ Ledet or any Straight Time Worker "directly or as a joint employer[.]" *See* Doc. 22 at Aff. Def. No. 2. Any arguments by Defendants that conditional certification is somehow inappropriate until after the Court determines whether Orbital employed these workers (either directly or jointly) fail because such a determination is a merits-based consideration which is premature at the notice stage where this case is now. *See Bowser*, 324 F.R.D. at 352 ("Even where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers courts have reserved considerations of whether the separate employers are joint employers for a final, stage two determination.") (quotations omitted); *McGhee v. TOMS King, LLC*, No. 2:19-cv-01470, 2021 WL 1176097, at *8 (W.D. Pa. Mar. 29, 2021) ("Defendants' joint employer argument [] is also more appropriately addressed at the next stage of the two-step certification process…[t]he court will address any such fact-specific arguments and merits-based defenses when and if decertification is requested."); *Johnston v. Titan Logistics & Resources, LLC*, Civ. A. No. 17-1617, 2019 WL 4345725, at *7 (W.D. Pa. Sept. 12, 2019) (rejecting defendant's arguments related to joint employment at the notice stage, noting "as in the misclassification cases, … these arguments are best reserved for step two, at which time the merits of the claims are considered … against a more fully developed record."); *Kolasa*, 2018 WL 3370675, at *6 (whether an employer "employed" workers in the putative class is "more appropriate for consideration at the second step of the certification process."); *Hodzic v. Fedex Package Sys., Inc.*, Civ. A. No. 15-956, 2016 WL 6248078, at *8-9 (W.D. Pa. Oct. 26, 2016) (conditionally certifying collective action of delivery drivers over defendant's objection it did not "employ" them); *Hively v. Allis-Chalmers Energy*, Civ. A. No. 13-106, 2013 WL 5936418, at *4-5 (W.D. Pa. Nov. 5, 2013) (same); *see also Sullivan-Blake v. FedEx Ground*

*Package Sys., Inc.*, No. 2:18-cv-01698-RJC, 2021 WL 3563388, at * (W.D. Pa. Aug. 12, 2021) (noting "the joint employer issue will be considered at the time of final certification[.]").[2]

To the extent the Court addresses whether Orbital "employed" Ledet and the other Straight Time Workers at the notice stage (and it shouldn't), Ledet need only make a "modest factual showing that [Orbital] was their [] employer" during the relevant period. *See Johnston*, 2019 WL 4345725, at *7. Ledet has done so here.

The broad remedial purpose of the FLSA promotes a "great public policy" for the benefit of all workers. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). In this regard, the FLSA requires employers to comply with minimum labor standards to promote "the health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). It defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA further defines the verb "employ" expansively to mean to "suffer or permit to work." 29 U.S.C. § 203(g); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). The Supreme Court has emphasized the "striking breadth" of the FLSA's definition of "employee" and noted it is used in the broadest sense ever "included in any one [Congressional] act." *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945). Indeed, "[t]he FLSA's definitions concerning employment status are intentionally and necessarily broad in order to effectuate the statute's remedial purpose of abolishing substandard labor

---

[2] Courts throughout the Country agree. *See, e.g., Berber v. Hutchison Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *4 (E.D.N.C. Aug. 14, 2018) ("Typically courts consider the joint employment doctrine at the decertification or the summary judgment stage."); *Aldapa v. Fowler Packing Co. Inc.,* 310 F.R.D. 583, 591 (E.D. Cal. 2015)("[I]t appears that discovery regarding Defendants' joint employment of Plaintiffs is unnecessary at this stage, as it is unrelated to class certification."); *see also Cruz v. Conocophillips*, 208 F. Supp. 3d 811, 817-18 (S.D. Tex. 2016)(declining "to perform this analysis at the notice stage, acknowledging that assessing an employer-employee relationship is a merit-based determination and at odds with the preliminary nature of conditional certification.").

conditions." *DeMarco v. FarmaceuticalRX, LLC*, Civ. A. No. 2:22-cv-1164, 2023 WL 2392848, at *3 (W.D. Pa. Mar. 7, 2023).

In the FLSA context, courts in the Third Circuit determine whether an entity is a worker's "employer" or "joint employer" by looking at whether the entity exercised "significant control" over the worker. *See In re Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 468 (3d Cir. 2012) (quoting *NLRB v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1124 (3d Cir. 1982)). In this regard, the Third Circuit uses a non-exhaustive list of factors to determine whether an entity is an "employer" or "joint employer" of a given employee, asking whether the alleged employer maintains: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *Id.* at 469; *Wuyscik v. U.S. Dept. of Labor*, 126 F. Supp. 3d 507, 515 n.9 (W.D. Pa. 2015) (Eddy, M.J.). "[J]oint employment status [can exist] when two [or more] entities exercise significant control over the same employees." *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997); *DeMarco*, 2023 WL 2392848, at *6.

And "[m]ultiple entities may constitute a single employer where the entities are nominally independent but in practice operate as one integrated enterprise." *DeMarco*, 2023 WL 2392848, at *6 (citing *Xiao v. Sichuan Gourmet LLC*, No. 2:21-CV-00482, 2022 WL 819096, at *4 (W.D. Pa. Mar. 18, 2022)). In evaluating whether multiple companies constitute a "single employer," the Third Circuit "considered the level of interrelation of operations, whether there is share common management, whether labor relations are under centralized control, and whether there is common ownership or financial control." *Id.* (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003)).

The record is replete with evidence indicating Orbital "employed" or "jointly employed" Ledet and other Straight Time Workers" during the relevant period. While H&K claims a joint employment

relationship can exist only if both alleged employers "actually paid" the worker (Ex. 4 at 96:8-12), that's not the law.

The effective date of Orbital's acquisition of H&K was January 1, 2021. *See* Ex. 4 at 79:12-16, 142:7-14; *see also* Exhibit 20, 100% Membership Purchase Agreement, at *2. Defendants admit they **both** employed Ledet as a Quality Assurance Manager after this date during the relevant period. *See* Doc. 17 at ¶¶ 10, 33.

> 10.     Defendants deny the allegations in paragraph 10 as stated.  By way of further answer, Plaintiff was employed by Defendant H & K as a Quality Assurance Manager from May 18, 2020 through February 5 of 2021 and for Defendant Orbital from February 5, 2021 through April 1, 2021.

Ledet confirms this. *See, e.g.*, Doc. 1; Ex. 12 at ¶¶ 2-23; Ex. 13 at 15:24-16:12, 29:10-17, 30:7-31:10, 49:22-50:5-17, 51:24-52:13, 71:4-11, 71:22-73:1, 81:16-24, 83:23-85:2, 104:10-24, 121:1-122:6.

Following its acquisition of H&K, Orbital took over H&K's contracts with its clients, represented to these clients Orbital and H&K were working together as a single company, and began servicing H&K clients. *See* Ex. 4 at 105:3-12, 105:23-106:20, 107:21-108:5, 109:14-110:3, 144:5-20; Exhibit 15, Excerpts from the Deposition of Orbital's Corporate Representative Brandon Otis at 42:22-43:1. H&K management-level employees were provided Orbital email addresses, took direction from Orbital, and were permitted to extend offers to potential Orbital employees on behalf of Orbital. *See* Ex. 4 at 96:13-97:13, 99:9-100:4, 102:1-102:7, 103:3-104:6, 107:21-108:5, 144:5-20.

To facilitate services to H&K and Orbital's clients, Ledet and other Straight Time Workers who previously worked for H&K were transferred from H&K's employment to Orbital's employment. *See* Ex. 15 at 41:7-17; Exhibit 16, Excerpts from the Deposition of Dylan Lewis at 44:1-21, 87:10-87:20 ("every single employee" from H&K transitioned to Orbital). In this regard, Orbital began communicating directly with these workers (including Ledet) following the sale of H&K, including about their transition from H&K to Orbital. *See* Ex. 4 at 67:23-69:10, 72:16-20, 125:1-9; Ex.

15 at 67:23-69:10, 72:16-20; Ex. 16 at 59:21-61:24, 62:18-63:19; *see also* Ex. 13 at 50:6-17.  Many of these workers received joint offer letters and/or employment agreements from both Orbital and H&K. *See, e.g.,* Exs. 1, 2, 6-8, 10. In practice, these workers regularly worked side-by-side on behalf of Orbital under the same agreements following the acquisition and communicated and consulted with one another on Orbital's behalf. Ex. 15 at 55:8-24; Ex. 16 at 68:4-17. H&K workers even began working out of Orbital's offices. Ex. 16 at 66:24-67:5. Unsurprisingly, H&K and Orbital both required the Straight Time Workers to track their hours and would bill their clients based on those hours. *See* Ex. 4 at 64:15-23, 66:3-25, 71:19-72:20.

All individuals, including management-level employees, previously employed by H&K were transitioned to Orbital and were subject to Orbital's policies and procedures, which were the same as H&K's. *See* Ex. 4 at 92:12-22, 127:20-129:1, 134:15-19; Ex. 15 at 39:7-16, 39:22-40:4, 41:7-17, 92:25-94:5; Ex. 16 at 44:1-21, 87:10-87:20. Importantly, Orbital had the ability to hire and fire H&K employees following the acquisition. *See* Ex. 15 at 47:11-48:16, 50:1-9; Ex. 16 at 80:22-81:10. And after the sale, Orbital had total access to all of H&K's employee and personnel records. Ex. 4 at 117:9-13; Ex. 15 at 46:14-47:3; Ex. 16 at 81:21-25. In fact, Orbital had access to nearly all of H&K's corporate policies and documents including its client contracts and MSAs and access to its accounting and payroll systems as early as February 2021. *Id.*; *see also* Ex. 4 at 13:17-15:10, 16:8-17:11; Ex. 15 at 28:20-29:1, 74:9-74:22. H&K also had access to Orbital's documents. *See* Ex. 4 at 131:3-13.

In short, to the extent the Court addresses whether Orbital "employed" Ledet and the other Straight Time Workers at the notice stage (and it shouldn't), Ledet more than meets his lenient burden to provide a "modest factual showing that [Orbital] was their [] employer" during the relevant period. *See Johnston*, 2019 WL 4345725, at *7.

### 2.  Arguments Related to Defendants' Exemption Defense Go to the Merits.

Defendants further contend they properly classified Ledet and the Straight Time Workers may as exempt employees. *See* Doc.17 at Aff. Def. No. 7. As with its "employer" defense, this too does not bar conditional certification: Courts in this District routinely grant conditional certification without making factual determinations as to an employer's exemption defenses because such defenses are merits-based and irrelevant at the initial certification stage. *See, e.g., Rood*, 2019 WL 5422945, at *3-4; *Meals*, 2017 WL 2445199, at *5; *Vasil v. Dunham's Athleisure Corp.*, No. 14-690, 2015 WL 7871360, at *2 (W.D. Pa. Dec. 4, 2015) (granting conditional certification because there was "some evidence that a number of employees working under a facial classification of exempt employees within Defendant's workforce might have been required to work under circumstances that violated the FLSA and in a manner that will support a finding that the employees were similarly situated"). Indeed, courts in this District have made clear that alleged exemption defenses do not preclude conditional certification. *Id.*; *see also Boyington v. Percheron Field Servs., LLC*, No. 14-90, 2015 WL 3756330, at *3 (W.D. Pa. June 16, 2015). That's because Ledet need only show "three things [for conditional certification]: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way." *Dunkel v. Warrior EnergyServs., Inc.*, 304 F.R.D. 193, 199 (W.D. Pa. Dec. 23, 2014).

### C.  Courts Routinely Conditionally Certify FLSA Collective Actions Based on Uniform Straight Time for Overtime Pay Practices.

Uniformity of a pay practice justifies conditional certification in cases involving straight time for overtime pay schemes like this. *See, e.g. Bowser v. Duke Energy, et al.*, No. 2:16-CV-00482, Doc. 60 (W.D. Pa. Mar. 30, 2018) (conditionally certifying class of hourly employees paid straight time for overtime with one plaintiff). *Wellman v. Grand Isle Shipyard, Inc.*, No. 14-831, 2014 WL 5810529, at *4 (E.D. La. Nov. 7, 2014) ("The alleged 'straight time for overtime' policy constitutes a 'factual nexus which binds the named plaintiffs and the potential class members together.'"); *Klapatch v. BHI Energy*

17

*Power Services, LLC*, No. 18-CV-11581, Doc. 45 (D. Mass. Feb. 22, 2019) (certifying a nationwide class of straight time for overtime workers).[3]

**IV.     LEDET'S NOTICE DOCUMENTS AND NOTICE METHODS ARE APPROPRIATE.**

"Absent reasonable objections, a plaintiff should be allowed to use the language they choose in drafting … a notice." *Pecora v. Big M. Casino, Inc.*, No. 18-1422, 2019 WL 302592, at *6 (D.S.C. Jan. 23, 2019); *see also Sylvester v. Wintrust Fin. Corp.*, No. 12-01899, 2013 WL 5433593, at *1 (N.D. Ill. Sept. 30, 2013). "The only thing that matters to the Court is that the notice of lawsuit and consent form convey accurately and fairly all the necessary information at this stage." *Sylvester*, 2013 WL 5433593, at *1. To facilitate the notice process and preserve the rights of those who have not yet opted-in, Ledet proposes utilizing the attached Notice and Consent Forms. *See* Exhibit 17, Ledet's Proposed Notice and Consent Forms. Variations of the proposed Notice and Consent Forms have been adopted by courts throughout the Country. The same is true of Ledet's proposed opt-in timeline. *Id.*

---

[3] *See also Terry v. Chicago Bridge & Iron Co.*, No. 4:17-CV-00367, Doc. 108 (S.D. Tex. March 8, 2018) (same); *Cantrell v. Lutech Resources Inc.*, No. 4:17-CV-2679, Doc. 21 (S.D. Tex. Feb. 9, 2018) (same); *Salinas v. Wood Group PSN Commissioning Servs., Inc.*, No. 2:17-CV-177, Doc. 34 (S.D. Tex. Dec. 26, 2017) (conditionally certifying class of nationwide oilfield personnel paid straight time for overtime); *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 863 (S.D. Tex. 2012) (conditionally certifying class of workers paid "straight time for overtime"); *Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (same); *Bursell v. Tommy's Seafood Steakhouse*, No. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 684 (S.D. Tex. 2016) (conditionally certifying class of construction workers paid straight time for overtime); *Carter v. Indianapolis Power & Light Co.*, No. 102-1812, 2003 WL 23142183, at *2 (S.D. Ind. 2003) (certifying a class holding various positions such as supervisors, foremen, and management trainers and were paid overtime at a straight time rate); *Gonzalez v. CNL Wins VII, Inc.*, No. SA-14-886, 2015 WL 10818674, at *7 (W.D. Tex. Mar. 24, 2015) (certifying a class of cooks paid straight time for overtime); *Gomez v. Loomis Armored US, LLC*, No. SA-16-931, 2017 WL 2999422, at *5-6 (W.D. Tex. Apr. 3, 2017) (certifying class of armored guards paid straight-time for overtime); *Velasquez v. FPS LP*, No. 13-1563, 2014 WL 3843639, at *8-9 (S.D. Tex. Aug. 4, 2014) (certifying class of technicians paid straight time for overtime).

**A.    Courts Routinely Require the Production of Names, Addresses, E-mail Addresses, and Phone Numbers for the Notice Process.**

FLSA plaintiffs are "entitled to specific discovery to determine the names and addresses of the Straight Time Workers." *Hoffmann-LaRoche*, 493 U.S. at 169. In addition, it is equally important to discover the email addresses for potential class members: Because the Straight Time Workers are staffed to clients pursuant to Defendants' instruction and needs, and because their work locations change on short notice and they may work in various locations away from home, this makes it difficult for the Straight Time Workers to consistently check or receive postal mail. Ex. 12 at ¶ 25; Ex. 14 at ¶ 26. Production of this information is routine in FLSA cases. *See, e.g.*, *Kolasa*, 2018 WL 3370675, at *7 (ordering the production of names, mailing addresses and email addresses); *Schneck v. Lawrence D. Brudy & Assoc., Inc.*, No. 15-1058, 2016 WL 912299, at *2 (W.D. Pa. Mar. 10, 2016) (ordering production of names, job titles, mailing address, phone number, email address, dates of employment, and locations worked); *Bland v. PNC Bank, NA*, No. 15-1042, 2015 WL 7587365, at *3 (W.D. Pa. Nov. 25, 2015); *Thompson*, 2013 WL 5511319, at *2 (ordering notice be sent by email and mail); *see also Doe v. Banc, Jack & Joe, LLC*, No. 17-3843, 2020 WL 2832621, at *6 (D.N.J. June 1, 2020) (ordering production of names, addresses, phone numbers, and email addresses because workers were transient).

**B.    Email Notice is the Rule Not the Exception.**

Courts in this District and Circuit recognize the importance of email notice. *See, e.g.*, *Kolasa*, 2018 WL 3370675, at *7 (approving notice via mail and email); *Thompson*, 2013 WL 5511319, at *2 (ordering notice be sent by email and mail); *Bland v. Calfrac Well Servs. Corp.*, No. 12-1407, 2013 WL 4054594, at *3 (W.D. Pa. Aug. 12, 2013) (allowing the dissemination of notice by email, because the putative plaintiffs worked in "remote locations," which could "have the effect of severely delaying or unnecessarily jeopardizing their receipt of the opt-in Notice and thus their ability to meaningfully weigh their decision … to join th[e] collective action"); *see also Doe*, 2020 WL 2832621, at *6 (agreeing

that additional forms of notice, including email and reminder notice were "necessary" because potential class members were transient).

In fact, email notice has become an accepted—and even preferred—form of notice in FLSA collective actions nationwide. This is especially true where "the transient nature of work performed by the [Straight Time Workers] and the reality that they may be away from their homes for extended periods of time" is, as here, a concern. *Kolasa*, 2018 WL 3370675, at *7. Other courts have reached the same conclusion: "notice by e-mail will **more likely** reach potential class members than regular mail sent to the home address…." *Jaso v. Bulldog Connection Specialists LLC*, No. 2:15-CV-269, 2015 WL 11144603, at *5 (S.D. Tex. Oct. 15, 2015) (emphasis added). Issuance of notice via email is crucial here: Because the Straight Time Workers are staffed to clients pursuant to H&K's instruction and needs, and because their work locations change on short notice and they may work in various locations away from home, this makes it difficult for the Straight Time Workers to consistently check or receive postal mail. Ex. 12 at ¶ 25; Ex. 14 at ¶ 26. Accordingly, email messaging is a superior means by which to send notice to the Straight Time Workers, and the Court should authorize Ledet to send notice via email.

### C.    Notice Via Text Message Is a Reliable Method for Delivering Information About This Lawsuit.

Likewise, the transitory, variable nature of the Straight Time Workers' work necessitates the Court authorize text notice. Ex. 12 at ¶ 25; Ex. 14 at ¶ 26. Courts across the country have recognized that "[c]ommon sense dictates that the transitory nature of [potential plaintiffs'] jobs makes notice via text message entirely appropriate." *Rosebar v. CSWS, LLC*, No. 18-7081, 2020 WL 43015, at *3 (N.D. Ill. Jan. 3, 2020) (citing *Brashier v. Quincy Prop., LLC*, No. 17-3022, 2018 WL 1934069, at *6-7 (C.D. Ill.

Apr. 24, 2018).[4] Accordingly, the Court should authorize Ledet to send notice to the Straight Time Workers via text message.

###### D.    Reminder Notice is Appropriate.

Ledet requests the Court authorize them to send an identical reminder notice by mail, email, and text message half-way through the 60-day opt-in period. Courts in this District recognize reminder notices are beneficial for potential plaintiffs who work away from home because they ensure that these workers are made aware of their rights. *See, e.g., Kolasa*, 2018 WL 3370675, at *7 (authorizing remainder notice via mail and email). Because the Straight Time Workers are staffed to clients pursuant to H&K's instruction and needs, and because their work locations change on short notice and they may work in various locations away from home, this makes it difficult to consistently check or receive postal mail, Ex. 12 at ¶ 25; Ex. 14 at ¶ 26., a reminder notice would ensure these workers actually receive notice and have an opportunity to make an informed decision about whether to join this case.

###### E.    Ledet Requests the Court Authorize Him to Call Certain Potential Plaintiffs Whose Notice Is Returned Undeliverable.

Ledet also requests the opt-in schedule allow them to call certain potential plaintiffs for the limited purpose of obtaining accurate contact information if their mailed or emailed notice is returned as undeliverable.[5] *See McDonald v. Encompass Services, LLC*, No. 16-1203-LPL, Doc. 29 (W.D. Pa. Dec. 20, 2016) (granting follow-up by telephone contact, posting of notices, email and mail delivery, and reminders). As courts have recognized, "telephone numbers … provide a more stable means of

---

[4] *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (finding that text-message notice was "likely to be a viable and efficient means of communicating with many prospective members of this collective action"); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication.").

[5] Ledet proposes doing so utilizing an agreed-upon script. *See* Ex. 17.

contacting a person who has moved than a mailing address." *Jaso*, 2015 WL 11144603, at *6 (citing *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 516-517 (W.D. Tex. 2015)). For this reason, Ledet requests the Court authorize Counsel to make follow-up telephone calls to those Straight Time Workers whose contact information is shown to be incorrect or no longer valid.

## V.    CONCLUSION

For these reasons, Ledet satisfies his modest factual burden to demonstrate he and the Straight Time Workers were together victims of a common policy or plan (Defendants' straight time for overtime pay scheme) alleged to violate the FLSA. Thus, the Court should grant Ledet's Motion and allow him to send notice to the Straight Time Workers as described herein.

**Dated: April 3, 2023**                     Respectfully submitted,

By: */s/ Alyssa J. White*

**Michael A. Josephson**
PA Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Alyssa J. White**
TX Bar No. 24073014
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Joshua P. Geist**
PA ID No. 85745

**GOODRICH & GEIST PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS
AND PUTATIVE CLASS MEMBERS**

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing the instant Motion, I conferred with Counsel for Defendant. Counsel for Defendant indicated Defendant is opposed to the relief sought herein, necessitating the filing of the instant Motion.

/s/ Alyssa J. White
**Alyssa J. White**

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document on all parties and/or their counsel of record via this Court's ECF electronic filing system on April 3, 2023, in accordance with the Federal Rules of Civil Procedure.

/s/ Alyssa J. White
**Alyssa J. White**

23