# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| LANCE LEDET, Individually and for Others Similarly Situated, | Case No. 2:22-CV-01324-CRE |
| v. | Collective Action |
| H&K ENGINEERING, LLC and ORBITAL ENGINEERING INC. | Jury Trial Demanded |

## LEDET'S OPPOSITION TO ORBITAL'S MOTION FOR CIVIL CONTEMPT

**A.**     **SUMMARY.**

Orbital's Motion for Civil Contempt (Docs. 84-85) lacks any factual basis or legal support. Orbital claims Ledet's counsel (Counsel) should be held in contempt because they "clearly targeted" Orbital employees paid "straight time for overtime" through advertisements. *See* Doc. 85; *see, e.g.*, Docs. 85-1, 85-3. In particular, Orbital says Counsel's advertisements regarding Orbital's pay policy violate: (1) the Parties' Protective Order (Doc. 45) because the advertisements were "premised on" some unidentified "protected information"; and (2) the Second Amended Case Management Order's (Doc. 81) provisions applicable to court-approved notice since the advertisements constitute "*de facto* notice." *See* Doc. 85 at 2.

Not only does Orbital admit it has no evidence of the "manner in which Plaintiff's counsel targeted Orbital's employees," it also fails to identify the "specific and definite language" instructing Counsel to "refrain" from engaging in perfectly legal advertising. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3d Cir. 1970) (civil contempt "is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts."). Moreover, attorney advertisements are not a substitute for Court-approved notice and are protected by the First Amendment. Orbital's Motion must be denied.

**B.    FACTUAL BACKGROUND.**

H&K was a multi-discipline engineering firm that provided engineering, procurement, and construction management services to the energy and paper industries. In January 2021, Orbital acquired 100% of the membership interest in H&K. Ledet worked for H&K as a QA Field Technician for H&K beginning in approximately May 2020 and continued in this role through Orbital's acquisition of H&K until April 1, 2021. Throughout his employment, H&K and later, Orbital, paid Ledet on an hourly basis with "straight time for overtime."  On September 15, 2022, Ledet filed this Action against H&K and Orbital alleging their "straight time for overtime" pay practice violated the Fair Labor Standards Act (the FLSA). Doc. 1.

Initially, Orbital admitted it employed and paid workers, including Ledet, "straight time for overtime." *See* Doc. 17 at ¶ 35 (admitting Orbital paid Ledet "the same hourly rate for all hours worked each week, including those in excess of 40 hours."). Orbital later tried to walk those admissions back, and now says the opposite is true. *See*, *e.g.*, Doc. 22 at ¶ 35 (denying Orbital employed Ledet or paid him "straight time for overtime"); Doc. 32 at ¶ 9 (requesting pre-certification discovery concerning whether Orbital was "Plaintiff's actual employer for FLSA purposes"); Docs. 72-73 (Orbital's Motion for Summary Judgment claiming Orbital did not employ Ledet or subject him to a "straight time for overtime" pay policy).

On April 28, 2023, the Parties conducted a full day mediation with experienced wage-and-hour mediator Carole S. Katz. *See* Doc. 79. Orbital refused to negotiate on behalf of any Orbital employees. At the conclusion of mediation, H&K and Ledet reached an agreement to settle this Lawsuit on behalf of the 45 individuals H&K subjected to its "straight time for overtime" plan. *See* Exhibit 1, Parties' Acceptance of Negotiated Term Sheet. Pursuant to their agreement, the Parties expressly agreed "Orbital Engineering and affiliates will be included in that release only as to Plaintiff's joint employer theory relating to H&K pay practices up through December 31, 2021." *Id.* In other

2

words, the Parties' settlement **does not cover** workers, *inter alia*, Orbital employed after December 31, 2021 (even if paid "straight time for overtime."). *Id.* Following their successful mediation, the Parties advised the Court they "reached an agreement in principle to settle this lawsuit in its entirety" and requested the Court stay all current deadlines. *See* Doc. 82.

Around lunchtime on May 4, 2023, Orbital's attorneys sent Counsel a threatening email. *See* Doc. 85-2. Therein, Orbital demanded Counsel "retract and remove" advertisements made by the law firm of JOSEPHSON DUNLAP, LLP.[1] *Id.*; *see also* Doc. 85-1; Doc. 85-3. The advertisements at issue generally refer to Orbital's "straight time for overtime" pay policy and invite the reader to seek additional information concerning potential claims they may have against Orbital. *See* Doc. 85-1; Doc. 85-3. Orbital never attempted to confer with Counsel regarding the advertisements and instead simply demanded Counsel remove the advertisements by 5:00 p.m. that same day or it would "seek immediate injunctive and other relief, including its attorneys' fees, from the Court in this action, and commence suit against you and your firm." *See* Doc. 85-2.

Of course, had Orbital bothered to confer with Counsel regarding the advertisements, it would have learned the advertisements had all been submitted to, reviewed, and approved by the State Bar of Texas prior to being posted. Indeed, on May 2, 2023, (and again on May 8, 2023) JOSEPHSON DUNLAP, LLP, submitted an application to the State Bar of Texas for review and approval of the advertisements. *See* Exhibit 2A – 2B, State Bar of Texas Approval of Orbital Advertisements from May 2, 2023; Exhibit 3A – 3E, State Bar of Texas Approval of Orbital Advertisements from May 8, 2023. And, unsurprisingly, after a thorough review of the advertisements the State Bar of Texas (twice) approved their usage and determined the advertisements complied with all applicable ethics rules. *Id.*

---

[1] Despite the fact the advertisements at issue were all posted by JOSEPHSON DUNLAP, LLP, Orbital seeks to find all Counsel representing Ledet, including attorneys from BRUCKNER BURCH PLLC and GOODRICH & GEIST PC, in contempt. *See* Doc. 85.

Orbital easily could have determined its claim the advertisements were "disparaging and defamatory" or otherwise violative of "the applicable rules governing attorney advertisements" had no factual basis had it simply conferred with Counsel. *Id.*; Doc. 85-2.[2]

## C.   ARGUMENT & AUTHORITY.

### 1.   Standards for Civil Contempt.

Courts have the inherent power to enforce compliance with their lawful orders through civil contempt. *See Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). To show contempt, the movant must show: (1) a valid court order existed; (2) the party sought to be held in contempt had knowledge of that order; and (3) the party disobeyed that order. *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010); *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009). The movant must prove these elements by "clear and convincing evidence" and all "ambiguities must be resolved in favor of the party charged with contempt." *John T. Ex Rel. Paul Tt. v. Del. Cty. Intermediate Unite*, 318 F.3d 545, 552 (3d Cir. 2003); *Matthews Int'l Corp. v. Lombardi*, No. 2:20-CV-89-NR, 2021 WL 1929266, at *1 (W.D. Pa. May 13, 2021).

Civil contempt is only proper "when a person violates an order of court which requires that person **in specific and definite language to do or refrain from doing an act or series of acts**." *Lichtenstein*, 425 F.2d at 1113 (emphasis added); *Retail Distrib. W. LLC, v. Kimberly Led Lighting LLC*, No. 21-cv-1237, 2022 WL 19349968, at *1 (W.D. Pa. Dec. 15, 2022). "[P]ersons may not be placed at risk of contempt unless they have been given specific notice of the norm to which they must pattern their conduct." *Inmates of Allegheny Cty. Jail v. Wecht*, 754 F.2d 120, 129 (3d Cir. 1985). Therefore, "a

---

[2] The Parties are currently memorializing their final settlement agreement. Not only is Orbital asking the Court to find Counsel in contempt for posting advertisements concerning Orbital's "straight time for overtime policy," it seeks to prevent Counsel from doing so as part of their settlement relating to H&K workers' claims. This request, not Counsel's advertisements, violates ethical rules. *See* TEX. COMM. ON PROFESSIONAL ETHICS, Op. 505 (1994) ("[S]olicitation is part of the practice of law and therefore cannot be more severely restricted in a settlement agreement tha[n] it is restricted in the Rules and applicable law.") (citing TEX. R. DISC. PROF'L CONDUCT 5.06(b)); *Bonura v. Uhl Ventures LLC*, No. 22-CV-395 (JLS) (JJM), --F. Supp. 3d --, 2023 WL 286662, at *5 (W.D.N.Y. Apr. 10, 2023).

contempt citation should not be granted if there is ground to doubt the wrongfulness of the [party's] conduct." *Harris v. City of Phila.*, 47 F.3d 1342, 1350 (3d Cir. 1995) (cleaned up); *Matthews Int'l*, 2021 WL 1929266, at *1.

### 2.    Orbital Fails to Show Counsel Violated Any Court Order.

Orbital claims the advertisements at issue violate: (1) the Protective Order's provisions on the use of protected information; and (2) the Second Amended Case Management Order's provisions governing notice. *See* Doc. 85 at 2. But neither the Protective Order nor the Second Amended Case Management Order provide any "specific and definite language" requiring Counsel to "refrain from" advertising for claims related to Orbital's straight time for overtime pay practice.

### a.    The Protective Order (Doc. 45).

Orbital claims the advertisements describing Orbital's "straight time for overtime" pay plan (Docs. 85-1, 85-3) violate the Protective Order's provision governing the use of "Protected Information." *See* Doc. 85 at 2; *see also* Doc. 45 at 3, ¶ 6. Orbital says Counsel necessarily violated the Protective Order's provision limiting the use of "Protected Information" for "purposes of preparation, trial, and appeal of the present action" by advertising Orbital paid workers "straight time for overtime," claiming this fact is somehow "premised on Plaintiff's counsel's improper reliance on Protected Information produced by Orbital in this case." *See* Doc. 45 at 3, ¶ 6; Doc. 85 at 2-3, 5-6.

The Protective Order provision that Orbital claims Counsel violated states only "[i]nformation designated as Protected Information may only be used for purposes of preparation, trial and appeal of this action." *See* Doc. 45 at 3, ¶ 6. However, Orbital fails to identify a single piece of allegedly "Protected Information" Counsel purportedly relied on in creating the advertisements in question outside of vague references to "pay information produced by Orbital in this case." *See* Doc. 85 at 2-3, 5-6. It simply says, without any proof, "the basis of those claims [in the advertisements], to the extent there were any, is the pay practice information produced by Orbital in this case, which has been

designated at 'Protective Information' under the Protective Order." *Id.* at 5-6. Not only is there zero proof of this, it's also simply not true.

Recall, Ledet sued Orbital for wage-and-hour violations stemming from its "straight time for overtime" pay policy. *See* Doc. 1. Ledet lodged these allegations against Orbital well before the entry of any protective order or the exchange of any information allegedly covered by a protective order herein. Thus, the "basis" of Counsel's claims Orbital paid its employees using a "straight time for overtime" pay plan is clearly not premised on "the pay information produced by Orbital in this case," but rather on the personal experience of its own client, whom Orbital paid "straight time for overtime" during the relevant period. Furthermore, Orbital admitted it paid workers "straight time for overtime" in its Original Answer. *See* Doc. 17 at ¶ 35 (admitting Orbital paid Ledet "the same hourly rate for all hours worked each week, including those in excess of 40 hours.").

The fact Orbital later produced allegedly "protected," anonymous payroll information confirming Orbital employed the same illegal pay practice Ledet had already complained about (and Orbital had already admitted using) cannot constitute grounds for contempt. **The Protective Order itself confirms this**. *See* Doc. 45 at 2, ¶ 2(c) ("Protected Information does not include, and this Protective Order shall not apply to, information that is already in the knowledge or possession of the party to whom the disclosure is made…or information that has been disclosed to the public or third persons in a manner making such information no longer confidential.").

Moreover, generic references to allegedly protected or confidential information are not sufficient to support a finding of contempt. *See Olsen v. J.W. Didado Elec., LLC*, No. 1:18-CV-105-SPB, 2020 WL 12631726, at *5 (W.D. Pa. Aug. 26, 2020), *adopted*, 2021 WL 1169248 (W.D. Pa. Mar. 29, 2021). So, the fact Counsel's advertisements generically reference the fact Orbital paid its workers "straight time for overtime" would not be enough to find Counsel in contempt even if it had obtained such information from allegedly protected payroll information produced by Orbital (and it didn't).

b.      The Second Amended Case Management Order (Doc. 81).

Orbital further claims Counsel's advertisements (which, again, have been approved by the State Bar of Texas, Ex. 2A – 2B, Ex. 3A – 3E) somehow violate the Court's Case Management Order. *See* Doc. 85 at 4-5. But tellingly, Orbital fails to specify the specific provision(s) of the Order Counsel allegedly violated. *Id.* And the actual provisions of that Order do not mention attorney advertising at all and certainly do not prohibit attorney advertising. Doc. 81, *passim*.

Instead, Paragraphs four and five of the Second Amended Case Management Order (the only provisions mentioned by Orbital in its Motion) provide deadlines concerning the drafting of any "opt-in notice and consent forms" and the provision of the putative class members' last-known contact information for the distribution of **court-approved** notice, if any, in this case. *Id.* at ¶¶ 4-5. Nothing in these provisions (nor anything else in the Second Amended Case Management Order) prohibits Counsel **from advertising** at all—much less does so "in specific and definite language" as required for civil contempt. *Id.*; *see also Lichtenstein*, 425 F.2d at 1113. Hoping to claim cover under provisions that do not discuss Orbital's actual complaint (attorney advertising), Orbital says the advertisements violate the Case Management Order because they "constitute 'improper and unauthorized *de facto* notice to prospective collective action members[.]" *See* Doc. 85 at 4.

i.      Advertisements Don't Constitute Improper Notice.

But attorney advertisements are simply not Court-approved notice and do not violate the Court's process for effectuating the issuance of notice to putative class members, invade the Court's province to determine if notice is proper, or somehow prevent the issuance of court-approved notice as Orbital suggests. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) ("informal efforts by plaintiffs and their counsel to provide notice to potential opt-ins through advertisement letters or other means are not factors to be considered by courts when determining whether to approve court-authorized notice"); *Culpepper v. Bank of Am., Nat'l Ass'n*, No. 3:17-CV-

00264 (VAB), 2019 WL 343253, at *17 (D. Conn. Jan. 28, 2019) (pre-certification letter to proposed class members was not "notice" and did not impact conditional certification); *Simpkins v. Pulte Home Corp.*, No. 608-CV-130-ORL-19DAB, 2008 WL 3927275, at *8 (M.D. Fla. Aug. 21, 2008) (finding a "mass-market advertisement is not a replacement for a targeted Court-authorized notice that fully explains a potential opt-in plaintiff's rights" and that plaintiff's counsel's conduct does not determine whether "members of the opt-in class receive a notice of this action and an explanation of their rights"); *Kalish v. High Tech Inst.*, No. Civ. 04-1440 (JRT/JSM), 2005 WL 1073645, at *4 (D. Minn. Apr. 22, 2005) (advertising letters to putative class members did not constitute "notice").[3]

Moreover, Orbital's contention that the advertisements constitute notice would require the Court to find all advertisements are notice, something decidedly rejected by law. Indeed, in a case where the court approved notice following extensive advertising in the form of a letter mailed directly "to some 600 employees … identified as potential members of the protected class," the Supreme Court specifically held "[c]ourt intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 168, 174 (1989). An advertisement telling a worker that information regarding potential claims is available is not synonymous with a court-authorized notice informing a potential class member of their right to join a pending collective action. *Id.* Orbital's Motion fails to make (or attempts

---

[3] *See also Mitchell v. City of San Diego*, No. 3:17-CV-02014-GPC-BGS, 2018 WL 3729282, at *4 (S.D. Cal. Aug. 6, 2018) (rejecting argument notice was inappropriate because of a labor organization's prior emails regarding the suit, finding these emails gave almost no information about the lawsuit); *Krupp v. Impact Acquisitions LLC*, No. 14-C-950-PP, 2016 WL 7190562, at *7 (E.D. Wis. Dec. 12, 2016) (advertising letter did not prevent conditional certification or notice); *Calderon v. Geico Gen. Ins. Co.*, No. RWT 10CV1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (finding defendant's argument that "plaintiff waived their right to court-authorized notice because Plaintiffs' counsel solicited potential plaintiffs to bring this action" was "not supported by case law in this Court or any other"); *Lewis v. Iowa Coll. Acquisition Corp.*, No. 08-61011-CIV, 2009 WL 10667061, at *2 (S.D. Fla. Mar. 10, 2009) (rejecting argument that "Plaintiff should not be entitled to Court-ordered notice because her counsel notified potential class members through mailings, email and a website").

to blur) this distinction. If attorney advertising constituted notice, the Supreme Court would have said so. Instead, it emphatically stated advertisements were different in "form and function" from Court-authorized notice. *Id.* at 174.

"Allowing district courts to approve the content and method of disseminating notice to potential class members ensures that the notices are timely, accurate, and informative; avoids later disputes over the form and content of unsupervised notices; serves the goal of avoiding duplicative suits; and facilitates expeditious disposition by entry of progression orders with 'opt-in' deadlines." *Id.* at 172. In this regard, it is undisputed courts have the power to authorize the sending of notice to potential FLSA class members pursuant to 29 U.S.C. § 216(b) to inform them of the action and to give them the opportunity to participate by opting in. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Ostensibly then, court-authorized notice must be: (1) sent to proposed class members; (2) inform them of the action; and (3) give them an opportunity to join. The advertisements at issue do none of these things and cannot be considered notice. *See* Docs. 85-1, 85-3.

Ledet isn't seeking to conditionally certify this matter for purposes of litigation, send notice of this Lawsuit to anyone, or solicit individuals to join this Action. Indeed, the Parties already agreed to settle this matter on behalf of the 45 individuals H&K subjected to the "straight time for overtime" plan. *See* Ex. 1. Nor is Counsel "actively soliciting clients to pursue claims against Orbital that Plaintiff's counsel has agreed to release in this action" as Orbital erroneously claims. *See* Doc. 85 at 3-4. To the contrary, the Parties' agreement to settle expressly provides "Orbital Engineering and affiliates will be included in that release only as to Plaintiff's joint employer theory relating to H&K pay practices up through December 31, 2021." *See* Ex. 1.

The advertisements do not mention H&K, let alone "target" workers jointly employed by H&K and Orbital through December 31, 2021, about joining this Action. *See* Docs. 85-1, 85-3. Counsel did not send the advertisements to individuals subject to the settlement of this Action (*see* Ex.

1), did not inform any reader of the existence of this Action (or any pending action for that matter), and did not provide any reader an opportunity to join this Action as an opt-in plaintiff. *Id.* The advertisements unambiguously offer only additional information related to potential overtime claims against Orbital. *Id.* In other words, the advertisements have nothing to do with the issuance of notice to any putative class member or the claims covered by the Parties' settlement.

Notwithstanding the fact there is no putative class to conditionally certify since this matter settled, there is absolutely no evidence any potential class member—or even a significant percentage of them—has any idea the advertisements even exist. The presence of advertisements on a website that workers must search to even see is simply not the equivalent of court-approved notice. The fact some Orbital employees may see the advertisements and reach out for information about their prospective claims against Orbital (which, again, are no longer part of this Action pursuant to the Parties' settlement, *see* Ex. 1) doesn't transform the advertisements into notice or represent improper communications, even if these individuals subsequently join a different action against Orbital. A collective action should not be limited to the "certain fortunate grievants [that] might happen to hear of a pending suit." *Lusardi v. Xerox Corp.*, 99 F.R.D. 89, 93 (D.N.J. 1983).

The cases offered by Orbital to support its position Counsel violated the Court's Case Management Order do not support Orbital's arguments. *See* Doc. 85 at 4-5 (citing *Bouder v. Prudential Fin., Inc.*, No. CIV.A. 06-CV-4359DMC, 2007 WL 3396303, at *2 (D.N.J. Nov. 8, 2007), *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. CIV. A. 09-CV-379, 2009 WL 1515175, at *6 (W.D. Pa. June 1, 2009), and *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 163 (N.D.N.Y. 2008)).

In *Bouder*, prior to moving for conditional certification the plaintiffs indicated they intended to send a letter and "Consent To Sue" form to putative class members. 2007 WL 3396303, at *1. Plaintiffs intended to send this letter and consent to "all registered representatives," regardless of the title or position the individual held while employed by the defendants. *Id.* at *3. The court found the

simulated notice and consent contained misleading content and granted a motion to cease and desist. *Id.* In contrast, this case is settled, Ledet is not seeking to effectuate notice to any putative class members, the advertisements at issue were not "targeted" to those covered by the Parties' settlement, nor are the advertisements "false or misleading." Moreover, the advertisements don't inform any putative class members of this Action or solicit their consent to join it as opt-ins. *See* Docs. 85-1, 85-3. Nothing about the advertisements at issue mimic the Court's desired notice process, usurps the authority of the Court, or constitutes a form of notice of this Action.

In *Kuznyetsov*, the court did not, as Orbital insinuates, prohibit counsel from advertising to prospective class members (let alone to prospective class members of a hypothetical future lawsuit involving different claims). Instead, the court granted plaintiff's motion for conditional certification and, only **after** doing so, ordered the plaintiffs to distribute notice as provided by the Court and to "desist any form of notification not pre-approved by the court." 2009 WL 1515175, at *6.

And in *Ruggles*, counsel sent "advertisement letters" and posted unofficial notices of the lawsuit to its website regarding ongoing FLSA litigation prior to certification. 591 F. Supp. 2d at 163-64. After conditionally certifying the putative class, the court determined it was now "fully engaged in supervising this notice process" such that plaintiffs should refrain from "employing advertising notices to the putative class" because of the potential "conflict between the court-authorized notice and those communications made by counsel to potential plaintiffs." *Id.* Unlike in *Ruggles*, the Court's Case Management Order did not expressly prohibit advertising and no potential conflict between such advertisements and court-approved notice to potential class members exists here. Indeed, the Parties agreed to settle this matter on behalf of 45 workers subjected to H&K's "straight time for overtime" pay plan and, as such, Ledet's motion for conditional certification is moot. *See* Ex. 1. Ledet is not seeking to notify any putative class members, including any putative class member employed by Orbital, of the existence of this Lawsuit or provide them an opportunity to join this Lawsuit.

ii.     **Orbital Has No Proof Counsel "Clearly Targeted" Anyone.**

Not only did Orbital fail to show the advertisements improperly disregarded the notice process to entice Orbital employees to join this Lawsuit, but it also failed to provide any proof Counsel's advertisements "targeted" any putative class member. Orbital's argument that the advertisements somehow violate the Case Management Order because "Plaintiff's counsel has published advertisements on LinkedIn that are targeted towards and are appearing on the front-page 'feeds' of Orbital's employees" is baseless. *See* Doc. 85 at 4. Orbital insinuates "the advertisements here are clearly targeted specifically to Orbital's employees" because "LinkedIn allows advertisers to target their advertisements to specific companies, among other means." *Id.* at 5, n. 2. But, in the same breath, **Orbital admits it has no actual proof Counsel targeted anyone**—let alone any putative class members in this settled Lawsuit. *Id.* ("Because the specific manner in which Plaintiff's counsel targeted Orbital's employees is exclusively within their possession, Orbital requests…the Court order Plaintiff's counsel to provide a complete explanation concerning the manner in which such targeting took place."). Orbital's admission proves its Motion is nothing more than a pretext to smear Counsel.

In short, Orbital failed to provide any evidence, let alone "clear and convincing evidence," showing Counsel disobeyed either the Parties' Protective Order (Doc. 45) or the Court's Second Amended Case Management Order (Doc. 81) in any relevant respect. Nor did it show, because it couldn't, either Order contained "specific and definite language" prohibiting Counsel from utilizing advertisements like those at issue here. *Lichtenstein*, 425 F.2d at 1113 *cf.* Docs. 45, 81. The Court must thus deny Orbital's Motion seeking to hold Counsel in contempt.

3.     **Advertisements are Protected by the First Amendment and Orbital Isn't Entitled to the Relief It Seeks.**

Not only does Orbital fail to meet its burden to show contempt, it also fails to support its unreasonable requests to restrict Counsel's speech and sanction Counsel by requiring it to pay for "fees incurred in filing and pursuing this motion." *See* Doc. 85 at 6 (seeking an Order requiring Counsel

"to reimburse Orbital's counsel for the reasonable attorneys' fees incurred in filing and pursuing this motion," to "withdraw all advertisements directed to Orbital's employees," prohibiting Counsel "from making any further advertisements directed to Orbital's employees," and to "disclose the specific details concerning the manner in which [Counsel] gas targeted Orbital's employees, which media platforms [Counsel] has used, and the results of those improper actions.").

Orbital seeks this extraordinary relief through civil contempt allegations (in addition to seeking protection and discovery concerning the advertisements at issue). *Id.* But the purpose of civil contempt sanctions counsels against granting Orbital's request. Sanctions for civil contempt are "remedial in nature" and serve to either "coerce compliance with a court order or to compensate the other party for losses sustained due to noncompliance." *United States v. Pozsgai*, 999 F.2d 719, 735 (3d Cir. 1993); *see also Berne Corp. v. Gov't of the V.I.*, 570 F.3d 130, 139 (3d Cir. 2009). Civil contempt sanctions may not be punitive, as punitive sanctions are appropriate only for criminal contempt. *See id.* ("Criminal contempt, by contrast, is a punitive sanction, designed to vindicate the court's authority for the contemnor's past non-compliance with a court order, and therefore cannot be cured by the contemnor."). "It is well established that only the least possible power adequate to the end proposed should be used in contempt cases." *Xtreme Caged Combat v. ECC Fitness*, No. 12-3855, 2019 WL 1245162, at *2 (E.D. Pa. Mar. 15, 2019) (quoting *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 895 (3d Cir. 1992)).

Yet Orbital demands the Court compel discovery and limit attorney advertising, which is protected speech under the First Amendment. *Shapero v. Kentucky Bar Assn.*, 486 U.S. 466, 472 (1988) (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977)). Moreover, restrictions on communications that interfere with the formation or prosecution of a class or collective action are protected by the Federal Rules of Civil Procedure. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). While the Court enjoys broad authority over communications with potential class members, "this discretion is not unlimited, and

indeed is bounded by the relevant provisions of the Federal Rules" and the First Amendment. *Bernard*, 452 U.S. at 100; *Shapero*, 486 U.S. at 472.

As such, "[a]ny infringement of such rights must be strictly limited only to that which is determined necessary *after sufficient findings* have been established in the record." *Gates v. Cook*, 234 F.3d 221, 227 (5th Cir. 2000). An order limiting speech must be based on "specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Bernard*, 452 U.S. at 101. "Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure[.]" *Id.* at 101-102. "The order resulting from such a process should be carefully drawn in order to limit speech as little as possible." *Gates*, 234 F.3d at 227 (citing *Bernard*, 452 U.S. at 102).

Courts applying *Gulf Oil* use "a two-part test for determining whether an order limiting a party's speech with absent class members should issue." *See Vogt v. Tex. Instruments Inc.*, CIVA 3:05CV2244 L, 2006 WL 4660133, at *3 (N.D. Tex. Aug. 8, 2006) (citing *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003)). "First, a court decides whether there is a need for a limitation on speech, and does so by determining whether the party's speech is 'misleading, coercive, or an attempt to undermine the collective action,'" and second, "[i]f the court concludes that a basis for restricting speech exists, it should then 'tailor appropriate injunctions and sanctions in light of First Amendment concerns." *Id.*

Courts are "more reluctant to grant protective orders or other limitations on communications made to potential plaintiffs in opt-in collective actions than in optout class action cases." *Laichev v. JBM, Inc.*, No. 1:07-CV-802, 2008 WL 11452416, at *4 (S.D. Ohio Apr. 11, 2008) (citing cases). In the FLSA context, because "collective actions do not have the same binding effects on potential plaintiffs as exists with class actions, courts seem less willing to restrict the communication and First Amendment rights of counsel.," and "[t]herefore, courts tend only to restrict communications in

collective actions where the facts of actual or potential abuse are egregious in nature in a particular case." *Id.*

Orbital fails to establish any limitation restricting communications with Orbital employees is necessary. While Orbital attacks Counsel's state-bar approved advertisements as "false and misleading" and "defamatory and disparaging," Doc. 85 at 2, 5 n.3, there is nothing false or misleading about the fact Orbital pays its workers "straight time for overtime." Again, Orbital *admitted* paying straight time for overtime. *See* Doc. 17 at ¶ 35 (admitting Orbital paid Ledet "the same hourly rate for all hours worked each week, including those in excess of 40 hours.").

Nevertheless, Orbital says the advertisements are somehow improper because they "falsely suggested that Orbital was violating the laws governing wages and 'taking advantage' of its employees." *See* Doc. 85 at 3, 5. Of course, Orbital ignores the express qualifying language contained in the advertisements. *See* Doc. 85-1 at 2 ("you may be missing out on the compensation you deserve."); Doc. 85-3 at 2 ("you may have a potential claim for unpaid wages."). And, again, Orbital fails to demonstrate the fact these workers "may" have claims against Orbital is false or misleading. *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 143 S. Ct. 677 (2023) (confirming workers paid anything but a "weekly-rate-only" under 29 C.F.R. § 541.602(a) must comply with the requirements of 29 C.F.R. § 541.604, including § 541.604(b)'s reasonable relationship test to be paid on a salary basis and thus properly classified as exempt).

Beyond failing to show **any** limitation on Counsel's communications is necessary, Orbital also fails to comply with *Gulf Oil*'s instructions that any order restraining speech be "carefully drawn" and "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 101-02. Orbital's requested restrictions are overbroad, vague, and infringe on Counsel's First Amendment rights to both advertise and communicate with potential members of **future** collective and class actions unrelated to this Lawsuit (because, again, the Parties agreed to settle

this matter on behalf of 45 H&K employees, Ex. 1). Courts consistently reject blanket prohibitions like those requested by Orbital and, only if necessary, opt for more tailored limitations.[4]

Moreover, Orbital failed to identify any harm it allegedly suffered. *See Gulf Oil*, 452 U.S. at 102 (courts may not exercise their power to restrict communications "without a specific record showing by the moving party of the particular abuses by which it is threatened") (citing *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977)). Without evidence of harm, courts reject requests to limit communications with putative class members and/or sanction attorneys. *See, e.g., Swinney v. Amcomm Telecommunications, Inc.*, No. 12-12925, 2014 WL 466278, at *1 (E.D. Mich. Feb. 5, 2014) (denying requests for sanctions and to prohibit counsel from communicating with potential class members where there was no finding attorney advertisements were false or misleading).

Orbital failed entirely to show Counsel's advertisements were false or misleading or that it suffered harm in any way. Instead of relying on a specific record of particular abuses, Orbital hangs its hat entirely on speculative theories of "improper targeting" it admits it has no evidence of (Doc. 85 at 5 n.2) and vague assertions the advertisements at issue are "false and misleading" and "defamatory and disparaging" (*Id.* at 2, 5 n.3). But *Gulf Oil* made clear that "the mere possibility of

---

[4] *See, e.g., Shaw v. Interthinx, Inc.*, 13-CV-01229-REB BNB, 2014 WL 12741157, at *3 (D. Colo. Feb. 7, 2014) (ordering plaintiffs' counsel to refrain from further distribution of one specific email the court found potentially misleading but rejecting the requested relief of (1) "enjoining the plaintiffs from all solicitation efforts" as going "too far" and (2) striking the consent forms signed and filed after receipt of the potentially misleading email); *Howard v. Securitas Sec. Services, USA Inc.*, 630 F. Supp. 2d 905, 907-09 (N.D. Ill. 2009); *Laichev v. JBM, Inc.*, 1:07CV802, 2008 WL 11452416, at *4–5 (S.D. Ohio Apr. 11, 2008) (rejecting defendant's request to shut down a website and prohibit plaintiffs' counsel from issuing internet press releases but ordering a single modification to avoid confusion); *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1344-45 (N.D. Ga. 2007) (declining request to shut down a website maintained by plaintiffs' counsel that encouraged employees across the country to join the case and instead ordering five specific statements on the website to be amended).

abuses" is insufficient to justify a restraint on counsel's communications. *See Gulf Oil*, 452 U.S. at 90.[5]

Here, the Court can deny Orbital's Motion even without delving into any First Amendment concerns. The advertisements at issue, which are clearly identified as such, do not constitute the type of extreme or inappropriate speech requiring the Court to even consider restraints on commercial speech. The State Bar of Texas approved the advertisements as complying with all ethical guidelines. *See* Ex. 2A – 2B; Ex. 3A – 3E. These advertisements are not improper "solicitations." *Krupp*, No. 14-C-950-PP, Doc. 78 (E.D. Wis. Jan. 3, 2017) at Doc. 78 (letters that were clearly marked as advertisements and complied with the Wisconsin Supreme Court's advertising rules were not inappropriate or unethical); *Lewis*, 2009 WL 10667061, at *2 ("This Court rejects Defendants' argument that Plaintiff should not be entitled to Court-ordered notice because her counsel notified potential class members through mailings, email and a website. The mailings and emails were approved as advertisements by the Florida Bar[.]").

### 4.    Orbital Violated Rule 11 in Filing Its Motion.

"Pursuant to Rule 11 of the Federal Rules of Civil Procedure, counsel have a duty to investigate and research in preparing pleadings prior to the submission of any written filing." *Panthera Rail Car*

---

[5] *See also Amaraut v. Sprint/United Mgmt. Co.*, No. 3:19-CV-411-WQH-AHG, 2020 WL 1820120, at *6 (S.D. Cal. Apr. 10, 2020) ("Defendant's arguments harken to prior cases where the parties moving for relief failed to provide any evidence beyond mere speculation that the challenged communications with prospective class member had actual potential to be abusive, misleading, or coercive.") (citing examples); *Finder v. Leprino Foods Co.*, 1:13-CV-2059-AWI-BAM, 2017 WL 1272350, at *6 (E.D. Cal. Jan. 20, 2017) ("Defendants' purely speculative concerns regarding the prejudicial effect on employees [] therefore do not convince the court that judicial intervention is necessary here."); *Shaw*, 2014 WL 12741157, at *3 (refusing to strike consent forms signed and filed after receipt of a potentially misleading email because "defendants have failed to present any evidence that the consenting plaintiffs were, in fact, misled"); *Cedano v. Thrifty Payless, Inc.*, CV-10-237-HZ, 2011 WL 8609402, at *12 (D. Or. May 9, 2011) ("At this point, I find imposing any limitations on communications that either party may have with putative class members would be based on speculation and conjecture, especially in light of the fact that the parties have failed to even assert that any abuse in communications has occurred."); *Howard v. Wilkes & McHugh, P.A.*, 06-2833 ML/P, 2007 WL 9706139, at *5 (W.D. Tenn. Nov. 13, 2007) ("The defendants have not made an adequate showing on the record of any actual or potential abuses by the Watson firm, let alone egregious abuses, to justify a total ban on communications.").

*LLC v. Kasgro Rail Corp.*, Civ. A. No. 13-679, 2013 WL 4500468, at \*14 n. 17 (W.D. Pa. Aug. 21, 2013) (citing *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.,* 999 F.2d 745, 752 (3d Cir. 1993); *Carlino v. Gloucester City High Sch.,* 57 F.Supp.2d 1, 36-37 (D.N.J.1999); *Terminix Int'l Co., L.P. v. Kay,* 150 F.R.D. 532, 538 (E.D.Pa.1993)); *Hawk Mountain LLC v. Mirr*a, Civ. A. No. 13-2081-SLR-SRF, 2016 WL 318778, at \*24 (D. Del. June 3, 2016) ("Rule 11 creates and imposes on a party or counsel an affirmative duty to investigate the law and facts before filing.").

It is clear Orbital failed to investigate either the law or facts concerning the "basis" of its frivolous contempt Motion before filing it. Had it bothered to do so, it never would have filed the Motion. A simple reading of both the Second Amended Case Management Order and Protective Order makes clear neither order prohibited Counsel from posting the advertisements at issue. Moreover, the fact Ledet is no longer seeking to conditionally certify this matter for purposes of litigation (and thus the issuance of Court-approved notice is not an issue) is abundantly clear from the fact this case settled. What's more, Orbital admits it has no proof Counsel engaged in any sort of improper "targeting" and submitted zero proof indicating the advertisements at issue were in any way "false or misleading." Had Orbital bothered to confer with Counsel, it also would have learned the State Bar of Texas approved Counsel's use of the advertisements at issue. *See* Ex. 2A – 2B; Ex. 3A – 3E. Simply put, Orbital had no reasonable basis for filing its Motion in violation of Rule 11.

**D.    CONCLUSION.**

As set forth above, Ledet respectfully requests the Court deny Orbital's Motion for Civil Contempt.

Respectfully submitted,

By: /s/ Andrew W. Dunlap
    **Michael A. Josephson**
    Texas State Bar No. 24014780
    **Andrew W. Dunlap**
    Texas State Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas State Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

    **Joshua P. Geist**
    PA ID No. 85745
    **GOODRICH & GEIST PC**
    3634 California Ave.
    Pittsburgh, Pennsylvania 15212
    412-766-1455 – Telephone
    412-766-0300 – Facsimile
    josh@goodrichandgeist.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify the foregoing document was served by ECF filing on all known parties on May 22, 2023.

    /s/ Andrew W. Dunlap
    Andrew W. Dunlap

19