**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | |
|---|---|
| LANCE LEDET, Individually and for Others Similarly Situated, | Case No. 2:22-CV-01324-CRE |
| v. | Collective Action |
| H&K ENGINEERING, LLC and ORBITAL ENGINEERING INC. | Jury Trial Demanded |

**BRIEF IN SUPPORT OF CONSENT
MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

Plaintiff Lance Ledet (Plaintiff or Ledet) respectfully submits this brief in support of his Consent Motion for Approval of Collective Action Settlement, which asks the Court for an order approving the settlement reached in this action by Ledet and Defendants H&K Engineering, LLC (H&K) and Orbital Engineering, Inc. (Orbital) (H&K and Orbital together, Defendants) (Ledet, H&K, and Orbital together, the Parties).

**I.   INTRODUCTION.**

Ledet, individually and on behalf of himself and the Putative Class Members who opt-in to this collective action under the Fair Labor Standards Act (FLSA),[1] with consent of Defendants, seeks approval of the Parties' Settlement and Release Agreement (the Agreement). *See* Exhibit A, Settlement and Release Agreement.[2] Defendants agree to pay a Settlement Amount of $1,050,000.00 (one million and fifty thousand dollars) to resolve the overtime and unpaid wage claims brought by Ledet and the forty-three Putative Class Members. As shown below, the Parties' Agreement is a reasonable

---

[1] Any Putative Class Member who returns an executed Settlement Claim Form thereby becomes a "Settlement Opt-in."

[2] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them as those defined in the Parties' Settlement and Release Agreement (Ex. A).

compromise of a *bona fide* dispute that will adequately compensate Ledet and the Putative Class Members for the unpaid overtime alleged and will eliminate the need for the Parties to engage in further contentious, protracted, and expensive litigation.

As such, Ledet seeks an Order from this Court approving the Parties' Agreement and dismissing the lawsuit with prejudice.

## II.  BACKGROUND.

On September 15, 2022, Ledet filed this collective action in the Western District of Pennsylvania. Ledet brought claims against Defendants, alleging these entities jointly employed him and jointly violated his rights under the FLSA, as well as the rights of those similarly situated to him. Doc. 1. Specifically, Ledet alleged Defendants failed to pay him and other similarly situated Straight Time Workers overtime in accordance with the FLSA, and Ledet further alleged Defendants' decision to classify and pay Ledet and its other workers in this manner was not made in good faith. *Id.*

On November 10, 2022, Defendants filed an Amended Answer, wherein they denied all material allegations of the Complaint and argued that Orbital never employed Ledet, that H&K properly classified Ledet and the other Straight Time Workers as exempt employees, that Defendants complied with the FLSA, and that their policies were made in good faith. *Id.* On November 30, 2022, the Court Ordered phased discovery to proceed, with discovery as to conditional certification comprising Phase I. Doc. 43. That same day, the Court entered an Order referring the instant action to mediation with mediator Carole Katz. Doc. 42.

The Parties engaged in litigation and discovery, and then on April 28, 2023, the Parties conducted a full day mediation with Mrs. Katz. *See* Doc. 79. At the conclusion of mediation and after numerous follow-up calls and emails, Defendants and Ledet reached a complete agreement to settle this Lawsuit on behalf of the forty-four individuals allegedly subjected to the "straight time for overtime" plan by H&K.

Throughout this litigation, the Parties vigorously pursued their positions and rights through extended legal and factual analysis, discovery, significant motion practice, and the exchange of information. Ultimately, the Parties exchanged thousands pages of documents and a significant number of hours spent preparing for and taking depositions. This significant exchange of information and data, and engagement in the discovery process, made the Parties particularly informed about the merits of Ledet and the Putative Class Members' claims and Defendants' defenses.

It is in the Parties' best interests to resolve this matter at this juncture. Ledet and Plaintiffs' Counsel, acting in the best interest of the forty-three Putative Class Members, wish to resolve this matter in a fair and cost-effective manner that would benefit all Plaintiffs without the expense, delay, and risk of continued protracted and complex litigation. Defendants also wish to avoid the expense, burden, and risk of continued protracted litigation and wish to resolve this matter on the agreed-upon terms. The Parties' claims and defenses pose risks which informed, in part, formed their decision to resolve the *bona fide* disputes between them through settlement.

At all times, the negotiations leading to the Parties' Agreement were adversarial and all Parties were represented by counsel who are highly experienced in wage-and-hour class and collective actions. The Parties have memorialized their agreed proposed resolution of this lawsuit in their Agreement (Ex. A). The Agreement represents a fair and reasonable compromise of the Parties' *bona fide* dispute, and the Court should approve the same.

**III.   SETTLEMENT TERMS.**

    **A.   Settlement Amount and Payments to Ledet and the Putative Class Members.**

The Agreement covers the claims of Ledet and up to forty-three Putative Class Members who submit forms consenting to join this Agreement. Specifically, the Parties reached a settlement to settle this lawsuit in exchange for payment by Defendants in the total gross amount of $1,050,000, which payment includes full compensation of Plaintiffs' alleged unpaid overtime wages, liquidated damages,

3

incentive award, payments to members of the collective, administrative fees, and attorneys' fees. The Gross Settlement Amount is allocated by Plaintiff as follows:

| | |
|---|---|
| Plaintiffs' Counsel's Attorney Fee: | $420,000.00 |
| Plaintiffs' Counsel's Costs and Expenses: | $25,000.00 |
| Ledet's Enhancement Award: | $10,000.00 |
| Net Settlement Amount: | $595,000.00 |

*See generally* Ex. A.

The Gross Settlement Amount includes: (1) an Enhancement Award for Named Plaintiff Ledet of $10,000.00; (2) Plaintiffs' Counsel's Attorneys' Fee of $420,000.00; (3) Plaintiffs' Counsel's out-of-pocket litigation costs and expenses of $25,000.00, to include all costs associated with settlement administration; and (4) the individual Settlement Shares of Putative Class Members who opt in, which were calculated on a pro rata basis, as reflected in Exhibit A, *8-9, of the Agreement as fully executed. Only the portion of the Net Settlement Amount associated with Ledet and the Putative Class Members who continue in this Action through approval of the settlement shall be paid by Defendants. *See generally* Ex. A. Any unclaimed portion of the Net Settlement Amount shall remain Defendants' property. *Id.* at ¶ 10.

The Plaintiffs' individual settlement shares will be distributed in two checks. *Id.* at ¶ 7. Half of each settlement payment to each Settlement Opt-In will be reported on an IRS W-2 form and represents payment for alleged unpaid overtime. *Id.* The other half will be reported on an IRS Form 1099 and represents payment for non-wage penalties and liquidated damages. *Id.* Defendants are separately responsible for payment of the employer's share of payroll taxes resulting from the W-2 portion of the settlement payments. *Id.* Settlement checks issued to Ledet and any Settlement Opt-ins will remain valid for deposit for 180 days from issuance. *Id.*

B. **Release of Claims.**

Ledet will be subject to a general release of all claims he has related to his employment with Defendants in exchange for the consideration he will receive pursuant to the Parties' Agreement, and

Class Counsel and any Settlement Opt-ins will likewise "fully, finally, and forever release, settle, and discharge" the Released Parties from any and all wage and hour related claims, including those under the Fair Labor Standards Act or any Pennsylvania state laws, through December 31, 2021. *Id.* at ¶ 4. Only those Putative Class Members who elect to return a Settlement Claim Form and receive an individual settlement share will release their claims under the Agreement. *See generally* Ex. A.

IV. **ARGUMENT & AUTHORITY.**

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees in this Circuit: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC,* 11 F.Supp.3d 474, 476 (E.D. Pa. Feb. 26, 2014) (citing *Lynn's Food Stores Inc. v. United States Dept. of Labor,* 679 F.2d 1350, 1354 (11th Cir. 1982)). In the latter situation, "a district court may enter a stipulated judgment after determining that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dino v. Pennsylvania,* C.A. 1:08–cv–01493, 2013 WL 4041681, at *3 (M.D. Pa. Aug. 8, 2013) (quoting *Lynn's Food Stores, Inc.,* 679 F.2d at 1352); *Vargas v. Gen. Nutrition Centers, Inc.*, C.A. 2:10-cv-00867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015).

Courts often look to the *Girsh* factors set forth by the Third Circuit when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

5

>   reasonableness of the settlement fund in light of the best possible
>   recovery; (9) the range of reasonableness of the settlement fund to a
>   possible recovery in light of all the attendant risks of litigation ...

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks omitted).

Here, the *Girsh* factors strongly support final approval of the Settlement Agreement.

    **A.**    **The Settlement Satisfies *Girsh*.**

        1.  <u>The proposed settlement terms are fair, reasonable and adequate in relation to the strength of Plaintiff's case and risks and expense of further collective litigation</u>**.**

Defendants agreed to pay a Gross Settlement Amount of $1,050,000.00 to resolve the claims of the Class Members. Participating settlement Class Members will receive an average recovery of approximately $13,534.09, even after settlement administration costs, Plaintiffs' Enhancement Awards, and attorneys' fees and costs are deducted. Ex. A, *8-9; Ex. B, ¶ 25. The Settlement represents a high percentage of the maximum expected recovery if Plaintiff prevailed. The back wages under the default, two-year statute of limitations of the FLSA for the forty-four Putative Class Members is $212,891.39 and the three-year back wages, allowed if the Plaintiff could establish a finding of a willful violation of the FLSA, is $452,019.64. Ex. B, ¶ 26. The Net Settlement Amount thus provides the forty-four Putative Class Members the opportunity to obtain 279% of their two-year back wages, or 132% of their three-year back wages. Ex. B, ¶ 27.

        2.  <u>This is an appropriate point for settlement.</u>

In this case, the proposed settlement was reached after extensive fact discovery and depositions, briefing on a limited summary judgment and collective certification issues, and the exchange of thousands of pages of information, followed by a full day mediation with experienced wage and hour mediator Carol Katz plus numerous follow-up calls and emails. Ex. B, ¶ 19. There was sufficient investigation and discovery conducted in this matter to allow Plaintiffs' Counsel and the Court to act intelligently concerning the settlement of the claims. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) (finding class counsel's "vigorous

6

litigation," pursuit of discovery, and use of informal discovery supported settlement). Notably, the parties exchanged documentation, records and information that allowed them to determine the losses that the Class Members allegedly suffered as a result of the alleged wage and hour violations. Ex. B, ¶ 12-13. Defendants produced critical payroll records that helped to inform the Parties' decision to settle. *Id.* Once these documents were analyzed by the Parties, along with the other discovery provided, interviews undertaken, additional discovery would not likely have changed the outcome of the Settlement. The state of the proceedings supports approval of the Settlement.

3. The opinion of experienced counsel supports approval of the settlement, which resulted from arm's length negotiations.

The Settlement was the result of a full day mediation session between the parties with the assistance of experienced wage and hour mediator, Mrs. Katz. Mrs. Katz routinely mediates complex class and collective action employment cases, is an AAA approved mediator, and has substantial experience dealing with overtime cases, especially those dealing with independent contractors. *See* http://www.carolkatz.com/

The participation by such neutral, and the adversarial nature of those negotiations illustrates that this case was resolved and settled only after sufficient arm's length bargaining. Counsel for both sides are experienced in wage and hour class action litigation. The Declaration of Plaintiff's Counsel describes their experience in this area. Ex. B, ¶ 3-7. These experienced wage and hour attorneys believe that this case is appropriate for settlement and that the substantial sum of $1,050,000 provides significant relief to Plaintiffs and Putative Class Members. Ex. B, ¶ 28. *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. Dec. 22, 2003) ("settlement negotiations took place at arm's length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight"); *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the

class"); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

### 4. A bona fide dispute existed, which resulted in real risk to the parties involved.

A dispute is "*bona fide*" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability," *Lignore v. Hosp. of Univ. of Pa.,* C.A. 2:04-cv-05735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007) (quoting *Morris v. Penn Mut. Life Ins. Co.,* CIV. A. No. 87-7063, 1989 WL 14063, at *4 (E.D. Pa. 1989)), and when its settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching…." *Brumley v. Camin Cargo Control, Inc.*, C.A. 2:08-cv-01798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food,* 679 F.2d at 1354); *see also Creed v. Benco Dental Supply Co.*, C.A. 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013).

Further, Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-07 (1945).[3] This inherent inequality, of course, is diminished when workers are represented by experienced counsel. *See*, *e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (giving weight to the fact that "plaintiffs were represented by highly competent counsel"); *see also Fernandez v. A-1 Duran Roofing, Inc.,* 2013 WL 684736, at *1 (S.D. Fla. Feb. 25, 2013) (finding court approval of an FLSA settlement unnecessary where "both Parties were represented by counsel and therefore negotiated a settlement … in an adversarial proceeding").

---

[3] *Brooklyn Savings Bank*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

Courts can therefore "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Diaz v. Scores Holding Co., Inc.*, C.A. 1:07-cv-08718, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* Absent unusual circumstances, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca*, 948 F. Supp. 2d at 365 (internal quotes omitted). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC*, C.A. 1:08-cv-08713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010).

There is no question the Parties' Agreement is a result of fiercely contested litigation. Ex. B, ¶ 21-22. The Parties resolved this lawsuit after nearly nine months of litigation and only after numerous contested motions (relating, among other things, to two motions for conditional certification and notice, and a motion for summary judgment as to Defendant Orbital's employer status), formal and informal discovery, multiple depositions, the production of thousands of pages of documents, and a day-long mediation in this case. Ex. B, ¶ 11-15.

The Parties vehemently contested the claims and defenses asserted. Ledet claimed Defendants misclassified him and its other Straight Time Workers as exempt employees and paid them a salary with no overtime compensation. *See* Docs. 74-75. Defendants consistently denied Ledet's allegations and asserted numerous affirmative defenses relating to liability, most notably that H&K properly classified and paid Ledet and its other Straight Time Workers as exempt employees. *See* Docs. 22, 74-76. The Parties disputed liability in this case, status of employer, whether the workers at issue were similarly situated, and only through ongoing arm's-length negotiations were they able to reach a compromise. Further, the Parties contested whether Defendants' classification and pay policy

9

regarding Ledet and the Putative Class Members was made in good faith, or whether any of their alleged violations of the FLSA were willful.

Ledet continues to believe the claims he seeks to settle here have merit, but he and Plaintiffs' Counsel recognize and acknowledge the uncertain outcome and risk of continuing with this litigation. Ledet also recognizes the expense and complexity of continued proceedings necessary to prosecute the claims through trial as well as the difficulties and delay inherent in FLSA misclassification litigation, particularly where joint employer status of one or more entities is disputed. Ledet also believes the resolution set forth in the Parties' Agreement confers substantial benefits to him and any Putative Class Members who wish to opt in. Based on this evaluation, Ledet and Plaintiffs' Counsel have determined the Parties' Agreement is in Ledet's and the Putative Class Members' best interests.

Defendants vigorously deny and continue to dispute all the claims alleged in this litigation and deny any and all allegations of wrongdoing, fault, liability, or damage of any kind to Ledet and the Putative Class Members. Like Ledet, Defendants recognize the risks and potential costs of continued litigation compared with the benefit of the Parties' proposed Agreement and desires to settle this lawsuit as set forth in the Agreement.

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is no question a *bona fide* dispute exists. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them.

If the Parties had not agreed to settle, both sides would require substantial additional discovery (including numerous costly depositions) to ready this case for trial. Further extensive briefing would be required, not just for the motions presently pending, such as Ledet's pending Amended Motion for Conditional Certification (Doc. 74) and Defendants' Motion for Summary Judgement (Doc. 72) but for all subsequent disputes as well. Continued litigation would result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources. *See Craig v. Rite Aid Corp.*,

No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Settlement is appropriate, and the Court should not have to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. *See Deitz*, 2013 WL 2338496, at *5. Moreover, if the litigation had continued, the Parties would face many obstacles and uncertainties, up to and including a potential trial. The Parties' Agreement fairly compensates Ledet and the Putative Class Members and eliminates the possibility of dismissal, decertification, or loss at trial and brings them value now (as opposed to years from now). The substantial benefit Ledet and the Putative Class Members will immediately receive is a significant factor weighing in favor of approval. As is the fact that Ledet, the representative plaintiff, agrees the terms of the Agreement are fair and reasonable. The Parties' positions strongly support the approval of the Agreement.

    5. <u>The Parties' proposed Agreement is fair and reasonable.</u>

  The ultimate determination a Court is to make when considering an FLSA settlement is whether the agreement is fair and reasonable. *See McGee v. Ann's Choice, Inc.,* C.A. 2:12-cv-02664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). If it is, the Court considers "whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace." *Id.* at *4; *see also Lyons v. Gerhard's Inc.*, C.A. 2:14-cv-06693, 2015 WL 4378514, at *3-4 (E.D. Pa. July 16, 2015).

  "It is helpful to recall the guiding principles of settlement in modern litigation, bearing in mind the unique role played by the Court in FLSA collective action disputes." *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *4 (M.D. Pa. May 29, 2013). The standard for approval of FLSA settlements is comparatively lenient. "[U]nlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not 'negotiating around the clear FLSA requirements' via settlement." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (quoting *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at 18 (D.N.J. Apr. 8, 2011)). "In

general, settlement is the preferred means of resolving litigation, and there remains a 'strong presumption' in favor of finding a settlement fair. The Court must also keep in mind that a settlement represents a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Deitz*, 2013 WL 2338496, at *4 (internal citations omitted).

The Parties' Agreement was the product of fair and honest arm's-length negotiations by experienced wage-and-hour class/collective action counsel. The Agreement is not illegal, a product of collusion, or against the public interest. Ex. B, ¶ 20-22. The Agreement does not grant preferential treatment to the named plaintiff (Ledet) and does not provide excessive compensation to Plaintiffs' Counsel under the circumstances. *See In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001). The Parties' Agreement is the product of arm's-length negotiations that occurred after nine months of hotly contested litigation. *See Lynn's Food Stores*, 679 at 1354 (finding FLSA settlement to fair based on the contested litigation history).

Further, the Parties' Agreement will provide fair pecuniary relief to Ledet and the Putative Class Members in the form of individual Settlement Shares in exchange for a release of their wage-and-hour claims and eliminates the risks both Parties would face if this complex litigation continued to resolution on the merits. The Parties agree the settlement is fair and reasonable. *Id.*

**B.     Ledet's Enhancement Award is Reasonable.**

The Agreement provides for an Enhancement Award payment to Ledet totaling $10,000.00 in recognition of the services he performed on behalf of all. Ex. A at ¶¶ 3-6. This payment is in addition to Ledet's individual Settlement Share he will receive from the Net Settlement Amount.

The proposed Enhancement Award is reasonable. *See, e.g.*, *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL5841177, at *8, *13 (S.D.N.Y. May 28, 2009) (awards of $7,500 each to three named plaintiffs, representing approximately three percent of the total $710,000 settlement amount, was reasonable). The Enhancement Award represents less than one percent of the Gross Settlement

Amount and is intended to recognize Ledet's initiative and efforts on behalf of the Putative Class Members and the time and effort he contributed to this lawsuit and the settlement process.

Through the course of this litigation, Ledet participated in the conditional certification, discovery, and settlement process. He provided discovery responses, and prepared for deposition and thereupon provided deposition testimony. Ledet expended significant effort and time educating Plaintiffs' Counsel regarding his and similarly situated Straight Time Workers' job experiences, compensation, and hours worked, as well as Defendants' policies and procedures and his knowledge of the business relationship between H&K and Orbital. He assisted Plaintiffs' Counsel throughout the litigation by providing documents and information related to his work for Defendants, helped move for conditional certification, and actively participated in settlement discussions and the settlement approval process to help ensure he and the Putative Class Members recovered their allegedly unpaid wages. Ledet participated in numerous telephone conferences with Plaintiffs' Counsel and their staff over the court of the litigation. And in bringing the claims against Defendants relating to their alleged FLSA violations, Ledet took significant risks. Indeed, Ledet faced potential retaliations and blackballing from prospective employers in the industry who, by merely performing a quick Google search of his (rather unique) full name, may quickly see he sued his former employer for back wages.

Accordingly, the Court should approve the Enhancement Award to Ledet in the total amount of $10,000.00 as provided in the Parties' Agreement.

### C.     Plaintiffs' Counsel's Attorneys' Fees and Costs are Reasonable and Customary.

The Parties' Agreement provides that Plaintiffs' Counsel's attorneys' fees amount $420,000 of the Gross Settlement Amount and for reimbursement of Plaintiffs' Counsel's out-of-pocket litigation expenses and administrative costs for $25,000. Ex. A at ¶ 2.

While courts in the Third Circuit may evaluate attorneys' fees through two established methods (the lodestar approach or the percentage of the recovery approach), the "[p]ercentage of recovery [method] is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 533 (E.D. Pa. 2016); *see also In re Diet Drugs*, 582 F.3d at 540 (finding the percentage-of-recovery method is generally favored) (citing *In re Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted).

In determining what constitutes a reasonable percentage fee, courts consider the following factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by Plaintiffs to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of Plaintiffs' counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *In re Prudential,* 148 F.3d at 342). These factors "need not be applied in a formulaic way" and "in certain cases, one factor may outweigh the rest.'" *In re AT & T Corp.*, 455 F.3d at 166.

1. The size of the fund and the number of beneficiaries.

The results obtained here represent a significant benefit to Ledet and the Putative Class Members in the face of the many legal and factual risks posed by litigation. The Settlement represents

14

a high percentage of the maximum expected recovery if Plaintiffs prevailed. The back wages under the default two-year statute of limitations for the 44 Putative Class Members is $212,891.39 and the three-year back wages, allowed if the Plaintiff could establish a finding of a willful violation of the FLSA, is $452,019.64. Ex. B, ¶ 26. The Net Settlement Amount thus provides the 44 Putative Class Members the opportunity to obtain 279% of their two-year back wages, or 132% of their three-year back wages. Ex. B, ¶ 27.

On average, each Plaintiffs' pro rata individual Settlement Share amounts to approximately $13,534.09. Ex. B, ¶ 25. Overall, this is a strong result warranting this Court's approval. *Id.*

### 2. The absence of substantial objections.

To date, there have been no objections to either the settlement terms generally or to the attorneys' fee request specifically. The absence of any objection weighs in favor of the fee request. *See Bredbenner*, 2011 WL 1344745, at *20.

### 3. Plaintiffs' Counsel's skill and efficiency.

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations omitted).

Here, Plaintiffs' Counsel includes attorneys with significant employment law as well as class and collective action wage-and-hour experience. Ex. B, ¶ 3-7. Plaintiffs' Counsel assumed a very real risk in taking on this case. Plaintiffs' Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery. *Id.*, ¶ 10. The Parties' Agreement, which involves provisions that are specific to Section 216(b)'s collective action provision of the FLSA is a reflection of Plaintiffs' Counsel's experience. *Id.* This

Agreement was reached after extensive fact discovery, including exchanging thousands of pages of documents, and ongoing arm's-length settlement negotiations between counsel for the Parties. *Id.* at ¶ 8-28.

The Agreement provides Ledet and the Putative Class Members with substantial benefits without having to wait for years of drawn-out litigation. Accordingly, this factor favors the requested fee.

### 4. The complexity and duration of litigation.

As discussed above, this case has been pending for nearly nine months and had the potential to continue for years. It involved inherently complex wage and hour issues, along with conditional certification and motions for summary judgment. All issues were brought to the forefront of the litigation from day one, tasking the Parties to move quickly and invest substantial time in this matter.

### 5. The risk of nonpayment.

Plaintiffs' Counsel represented Plaintiffs entirely on a contingent basis, with no guarantee of payment, and there were significant hurdles to overcome in achieving the settlement. Ex. B, ¶ 23. Plaintiffs' Counsel invested significant time and expense in litigating this matter despite the potential the Court would find no violation of the FLSA. Given these considerations, the significant risk of non-payment weighs in favor of the requested fee. *See Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012).

### 6. Plaintiffs' Counsel devoted substantial time to the case.

Plaintiffs' Counsel consisted of a team of attorneys from three law firms, paralegals, and staff all dedicated to working up and prosecuting Ledet and the Putative Class Members' claims. Their work involved close to one hundred docket entries and Court filings, including preparing a response to a motion for summary judgment and drafting a motion for conditional certification; review and preparation of thousands of pages of discovery requests and responses; numerous depositions; and

16

hundreds of emails, internally for case management and strategy, and externally with opposing counsel to work through the constant issues the Parties ran into and the Court to address and resolve disputes. *See generally* Ex. B. These efforts support the approval of the fee requested. *See Brumley*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11.

7. <u>Fees in similar cases support the requested attorneys' fees here.</u>

The requested attorneys' fee award is also consistent with awards in similar cases. Ex. B, ¶ 30. "In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015); *see Acevedo*, 2017 WL 4354809 at *18 ("[C]ourts have approved attorneys' fees in FLSA collective and class action settlement agreements 'from roughly 20-45%' of the settlement fund."). "Where the fees are set as part of negotiations between the parties, there is a greater range of reasonableness for approving attorney's fees." *Lliguichuzhca*, 948 F.Supp.2d at 366. On balance, then, the percentage fee negotiated by the Parties is not unreasonable relative to the "size of the fund created."

In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see Craig*, 2013 WL 84928 at *12 ("In this region, '[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation' and thus we have no trouble finding that an award of thirty-two percent (32%) less expenses, which falls at the low end of that range, is consistent with market rates.").

Here, Plaintiffs' Counsels' attorney fees of $420,000 equate to 40% of the Gross Settlement Amount adequately compensates Plaintiffs' Counsel for the significant work they did in this case and falls well within the range of reasonable allocations in the context of awards granted in other, similar cases. *See, e.g., Alvarez v. BI Inc.*, Civ. A. No. 16-2705, 2020 WL 1694294, at *7 (E.D. Pa. Apr. 6, 2020) (approving fee award of 40% of the gross settlement amount in FLSA collective action); *Mabry v.*

17

*Hildebrandt*, Civ. A. No. 14-5525, 2015 WL 502810, at *4 (E.D. Pa. Aug. 24, 2015) (allowing percentage-of-recovery for attorney's fees at 40% of the gross settlement amount); *Smith v. Guidant Global, Inc., et al.*, Civ. A. No. 2:22-cv-01365-DSC (W.D. Pa. Nov. 29, 2022) Doc. 173 (Same); *Lyons v. Gerhard's Inc.*, Civ. A. No. 14-06693, 2015 WL 437514, at *5 (E.D. Pa. July 16, 2015) (approving fee award of 44% of gross settlement amount, noting "[a]s a percentage of total recovery, this fee is on the higher side, but it is not so high as to be unreasonable."); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F.Supp.2d 369, 382-83 (W.D. Pa. 2002) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)). The attorneys' fee award of approximately 40% of the Gross Settlement Amount also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21.

Accordingly, the fees approved in similar cases further support the requested fee here.

8. Plaintiffs' Counsel's out-of-pocket expenses should be approved.

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). "[C]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014); *see, e.g., Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving reimbursement of costs including (1) "travel and lodging," (2) "local meetings and transportation," (3) "depositions," (4) "photocopies," (5) "messengers and express services," (6) "telephone and fax," (7) "Lexis/Westlaw legal research," (8) "filing, court and witness fees," (9) "overtime and temp work," (10) "postage," and (11) "the cost of hiring a mediator").

Here, Plaintiffs' Counsel's have capped their costs at $25,000, which will also include settlement administration. Ex. A at ¶ 2(iii); Ex. B, ¶ 29. Plaintiffs' Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, copying, depositions, mediation, meetings, and legal

18

research. *Id.* The reported expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement.

## V. DISMISSAL OF LAWSUIT WITH PREJUDICE.

In addition to approving the Agreement, Plaintiff requests that the Court dismiss this lawsuit with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

## VI. CONCLUSION.

For these reasons, Plaintiff respectfully requests that the Court grant the Consent Motion to Approve Collective Action Settlement and to Dismiss Lawsuit with Prejudice.

Dated: June 7, 2023

Respectfully submitted,

JOSEPHSON DUNLAP LLP

By: */s/   Andrew W. Dunlap*
    Michael A. Josephson
    Texas Bar No. 24014780
    *mjosephson@mybackwages.com*
    Andrew Dunlap
    Texas Bar No. 24078444
    *adunlap@mybackwages.com*
    Alyssa White
    Texas Bar No. 24073014
    *awhite@mybackwages.com*
    11 Greenway Plaza, Suite 3050
    Houston, TX  77046
    Tel: (713) 352-1100 / Fax (713) 352-3300

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
*rburch@brucknerburch.com*
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788 /Fax: (713) 877-8065

AND

>Joshua P. Geist
>PA ID No. 85745
>*josh@goodrichandgeist.com*
>William F. Goodrich
>PA ID No. 30235
>*bill@goodrichandgeist.com*
>GOODRICH & GEIST PC
>3634 California Ave.
>Pittsburgh, Pennsylvania 15212
>Tel: (412) 766-1455 /Fax: (412) 766-0300
>
>**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on June 7, 2023, in accordance with the Federal Rules of Civil Procedure.

>*/s/ Andrew W. Dunlap*
>Andrew W. Dunlap